Robert C. CHASE and Ruth L. Chase, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 90–2097.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 11, 1991.

Decided Feb. 22, 1991.

738

John E. Mack, New London, Minn., for appellants.

Gary Allen, Dept. of Justice, Washington, D.C., for appellee.

Before LAY, Chief Judge, and McMILLIAN and ARNOLD, Circuit Judges.

McMILLIAN, Circuit Judge.

Robert C. Chase and Ruth L. Chase (hereinafter "Chase") appeal the Tax Court's[1] determination that they were liable for deficiencies in federal income taxes in the amount of $3,442, pursuant to 26 U.S.C. § 1401 (1988), and additions to tax for negligence in the amount of $172, pursuant to 26 U.S.C. § 6653(a), for the 1984 tax year. Because we hold that the findings of the tax court are amply supported by the record, we affirm.

Prior to 1983, Chase held a fifty percent interest in two partnerships in which he was actively involved. The first partnership was Midstate Leasing Company ("Midstate Partnership"), which was formed to manage and lease an airplane hangar and an aircraft repair building. The second, B & K Salvage Company ("B & K Partnership"), was engaged in the business of salvaging airplanes and airplane parts and reselling them to other shops.

In 1983, Chase purported to change the form of Midstate and B & K Partnerships to business trusts, under Minn.Stat. § 318.01, with two corporations—Parnell and Armageddon[2]—acting as trustees. Chase also started a new business, in the form of a business trust, called Aerial Crop Care Company, which was involved in aerial spraying. All three businesses were located at the Mandan Municipal Airport in Mandan, North Dakota. Parnell and Armageddon, as trustees, created four Decla-

---

**1.** The Honorable Daniel J. Dinan, Special Trial Judge, United States Tax Court.

**2.** Parnell and Armageddon are both nonprofit corporations formed under the laws of South Dakota.

rations of Trust[3] on behalf of Chase and filed them with the Minnesota Secretary of State. All four Declarations of Trust were signed by Cheryl A. Foshaug, as President of Armageddon, and Marti Inman, as President of Parnell. These documents formed the following entities: the North Star Company ("North Star"), the B & K Salvage Company ("B & K"), the Aerial Crop Care Company ("Aerial"), and the Abacaxi Company ("Abacaxi").

According to trust documents, the beneficial interests were to be evidenced by trust certificates, which enabled the holder to participate proportionately in all dividends and other distributions of income or principal from the trust, at the discretion of the trustees. Upon termination of the trusts (each trust had a life of 25 years), the trustees were to distribute all property, as well as all income and accrued interest, to the certificate holders. The trustees were to hold trust property in the name of the trust with absolute and exclusive power and control over the management of each of the businesses, free from any right of control by any of the certificate holders. The trustees were to maintain books, accounts and records pertaining to each trust. North Star received the property held by Midstate Partnership; B & K took over the B & K Partnership's salvage business; Aerial consisted of the spraying business; and Abacaxi was simply a holding company, which held certificates to Aerial and B & K.

Although Foshaug was held out to be an incorporator, director and officer of Armageddon, the evidence before the tax court indicated that she was neither a director nor an officer, nor did she perform any duties for any of the four trusts. In fact, many of the documents she signed were merely single sheets of paper containing only a signature block for her signature. Marti Inman, who was president of Parnell, was not a director of the corporation, nor did she perform any duties for the trusts. Her sole responsibility was to sign papers, which were often blank except for her signature line.

Chase and his wife were the only certificate holders in North Star and in Abacaxi. Abacaxi in turn held fifty percent of the certificates in Aerial and B & K, while Chase's son held the other fifty percent. In all times relevant to this case, Chase and his son managed and operated the businesses in the same manner after the creation of the trusts as they had before.[4] Chase testified that his intention in forming the trusts was to protect his business assets from personal creditors, and not to avoid taxes. The only remuneration that Chase received from B & K and Aerial was in the form of distributions from the business trusts, and he reported this income on Schedule E of his federal income tax return,[5] but did not report any of these amounts as self-employment income.

The Commissioner challenged the business trusts as a sham and reclassified the North Star distributions as rental income. The Commissioner also increased Chase's self-employment income by $24,697, which represents the distributions from B & K and Aerial. As a result of this reclassification, the Commissioner determined a deficiency in Chase's federal income tax for the 1984 taxable year in the amount of $3,442, and imposed penalties for negligence under 26 U.S.C. § 6653(a). After trial, the tax court held in favor of the Commissioner, finding that the trusts "were mere paper entities formed to evade the self-employment tax," and that the trustees were

---

3. Each trust was to be an unincorporated common law trust, which is often referred to as a "Massachusetts Trust."

4. Chase was the managing director of North Star at all times relevant to this case. Chase's son was the managing director of B & K both before and after the creation of the trust. Chase managed Aerial until 1983, when his son took over, and Chase's daughter was the managing director of Abacaxi.

5. North Star reported net rents of $13,169 for the taxable year in issue. Abacaxi reported $7,512.50 in taxable income from Aerial, which represented fifty percent beneficial ownership, and $15,770 of taxable income for its fifty percent interest in B & K. The total of these amounts ($36,451.50) was reported on Chase's Schedule E.

"straw men." *Chase v. Commissioner,* No. 15751–88, slip op. at 10 (T.C. Mar. 28, 1990). The tax court also held that Chase was liable for the negligence penalty because he failed to act in a reasonable and prudent manner under the circumstances. *Id.* at 11, *citing Neely v. Commissioner,* 85 T.C. 934 (1985). The tax court discounted Chase's claim of reliance on legal counsel, finding that he knew or reasonably should have known that the trusts were not legitimate. This appeal followed.

The issue on appeal is whether the tax court erred in finding that the business trusts lacked economic substance and that Chase was negligent in failing to comply with the pertinent provisions of the tax code. We employ the same standard of review for decisions of the United States Tax Court as for civil actions decided by federal district courts. 26 U.S.C. § 7482(a) (1989). Findings of fact are upheld unless clearly erroneous. *Commissioner v. Duberstein,* 363 U.S. 278, 291, 80 S.Ct. 1190, 1199, 4 L.Ed.2d 1218 (1960). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

■ Chase argues that the tax court erred in finding that his business trusts lacked economic substance because the evidence failed to establish that this business form was a sham. Chase claims that he established the business trusts according to Minnesota law, and that federal tax regulations treat such trusts as associations, which are not subject to self-employment tax. *See Morrissey v. Commissioner,* 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263 (1935). He also contends that the form of the business entity is not to be ignored, unless it is shown that its principal purpose is tax avoidance. *See National Investors Corp. v. Hoey,* 144 F.2d 466 (2d Cir.1944). Chase concludes that, because his purpose in creating the trusts was to protect his business assets from personal creditors and not tax avoidance, the Commissioner must respect

the business form, even though the trustees are only nominal managers. We disagree.

The record demonstrates that there was no real change in Chase's economic relationship to his businesses as a result of the creation of the trusts, and this lack of substance is strong evidence that the trusts were merely a sham to avoid payment of self-employment tax. The evidence indicates that the trustees had no management authority and regularly signed blank pieces of paper that were later filled in, and that Chase and his son continued to operate the businesses in the same manner as before the creation of the trusts. "Where taxpayers have structured indirect transactions to obtain tax advantages, the law typically looks to the substance and not the form of the transactions." *Estate of Sachs v. Commissioner,* 856 F.2d 1158, 1164 (8th Cir.1988). After reviewing the evidence, we find no basis for believing that a mistake has been committed.

■ Chase's argument that the tax court erroneously upheld the negligence penalty imposed on him by the Commissioner is also without merit. Like other determinations by the Commissioner, the determination of a negligence penalty is presumptively correct, and the taxpayer bears the burden of proving that it was improperly imposed. *See Marcello v. Commissioner,* 380 F.2d 499, 506 (5th Cir.1967), *cert. denied,* 389 U.S. 1044, 88 S.Ct. 787, 19 L.Ed.2d 835 (1968). In addition, because the tax court's decision involved a factual determination, it will not be disturbed on appeal unless clearly erroneous. We hold that the evidence is sufficient to support the tax court's finding that, under the circumstances, "[a] reasonable person ... would have undertaken a closer inspection of what was transpiring" and that Chase "should have questioned the fact that someone else was supposed to manage his business when they were noticeably absent." *Chase v. Commissioner,* slip op. at 29.

We hold that the tax court did not err in finding that the business trusts lacked the economic substance necessary for recogni-

tion under 26 U.S.C. § 1401, nor in upholding the negligence penalty imposed under 26 U.S.C. § 6653(a). Accordingly, the judgment of the tax court is affirmed.