JON J. PAULSON AND GLORIA J. PAULSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; P QUAD COMPANY TRUST, ARMAGEDDON, INC., TRUSTEE, AND PARNELL, INC., TRUSTEE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Paulson v. Commissioner
Docket Nos. 9322-90, 9472-90
United States Tax Court
T.C. Memo 1991-643; 1991 Tax Ct. Memo LEXIS 698; 62 T.C.M. (CCH) 1622; T.C.M. (RIA) 91643; December 26, 1991, Filed *698 Decisions will be entered under Rule 155. Jon J. Paulson and Gloria J. Paulson, pro se in docket No. 9322-90. John Koch, for the petitioner in docket No. 9472-90. John C. Schmittdiel, for the respondent. COHEN, Judge. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION In these consolidated cases, respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Additions to Tax
Sec.
Sec.
Sec.
Petitioners
Year
Deficiencies 6653(a)(1)(A)
6653(a)(1)(B)
6661
Paulson
12/31/86
$ 19,248
$ 962
*
$ 4,812
P Quad Co.
10/31/86
23,840
1,192 **
5,960
All section references are to the Internal Revenue Code as in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The determinations against the Paulsons, on the one hand, and P Quad Company, on the other, reflect alternative positions of respondent *699 as to which petitioner is taxable on certain income. The issues for decision are whether Jon J. Paulson and Gloria J. Paulson are taxable on income reported by P Quad Company for the period ended October 31, 1986; whether petitioners are entitled to deductions claimed on their respective returns beyond those conceded by respondent; whether Jon J. Paulson is liable for self-employment tax on income reported by P Quad Company; and whether petitioners are liable for the additions to tax under sections 6653(a) and 6661. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners Jon J. and Gloria J. Paulson (the Paulsons) resided in Minnesota and petitioner P Quad Company had its principal place of business in Minnesota at the time the petitions were filed. Beginning in 1975 and continuing through September 1983, Jon J. Paulson practiced veterinary medicine in a partnership known as Western Veterinary Service. Jon J. Paulson's partners in Western Veterinary Service included three other veterinarians, Michael Dierenfeld, Lloyd Emond, and Loren Johnson. During 1983, Jon J. Paulson and Lloyd Emond *700 proposed to change the business form of the veterinary practice from a partnership to a business trust. Subsequently, James and Joan Noske met with the partners and presented a plan that included operating the veterinary practice in the form of a business trust. The Paulsons agreed to establish Western Veterinary Company and P Quad Company as business trusts after only a cursory investigation of the legal ramifications of the trusts. Jon J. Paulson's investigation of the business trust form included discussions with James and Joan Noske and a telephone conversation with an attorney recommended by James Noske. As recommended by the Noskes, Parnell, Inc. (Parnell), and Armageddon, Inc. (Armageddon), nonprofit corporations formed under the laws of South Dakota, would form a trust using an instrument referred to as a declaration of trust and would thereafter act as trustees of the trust. The trust was to be an unincorporated common law trust or Massachusetts Trust. The trustees were to file the declaration of trust with the Minnesota secretary of state. The beneficial interests in the trust were to be represented by trust certificates. The certificates would enable their holders *701 to participate proportionately in all dividends and other distributions of income or principal from the trust. During the life of the trust, the certificate holders would have no right to trust property, only a right to their proportionate share of dividends and distributions as actually paid. Upon termination of the trust, the trustees would distribute all property, income, and accrued interest in the trust to the certificate holders. The business and property of the trust were to be managed by the board of trustees, who were named in the declaration of trust (Parnell and Armageddon). The trustees were to hold the trust property in the trust name and were to have absolute and exclusive power and control over the management and conduct of the business free from any right of control of any of the certificate holders. The trustees were to maintain books, accounts, and records, preserve accurate minutes of all meetings, and record all decisions pertaining to the trust. The trust was to remain in existence for 25 years. P Quad Company was created on April 25, 1983, and filed a declaration of trust with the Minnesota secretary of state on August 2, 1983. Western Veterinary Company *702 was created on April 25, 1983, and filed a declaration of trust with the Minnesota secretary of state on August 25, 1983. The Declarations of Trust were signed by two trustees, Cheryl A. Foshaug (Foshaug) as president of Armageddon and Marti Inman (Inman) as president of Parnell. Foshaug's signature also appears on various minutes and contracts for the trusts. James Noske asked Foshaug to become president of Armageddon. Foshaug was the president of Armageddon from August 1981 to January 1984. As president of Armageddon, Foshaug performed no management or trustee duties for the two trusts except the signing of various papers, including blank or incomplete pages. Foshaug never held any meetings, negotiated any matters, or discussed Armageddon's business with its board of directors. Foshaug never heard of P Quad Company or Western Veterinary Company prior to June 1990 and never took any action on behalf of any of those entities. As president of Parnell, Inman signed various papers at the request of James Noske. The papers signed by Inman were incomplete with many blank spaces. Inman did not read the documents prior to signing them. She performed no other management or trustee *703 duties for Parnell. Inman never heard of Western Veterinary Company or P Quad Company before June 1990 and never acted on behalf of either of those trusts. P Quad Company's minutes dated November 1, 1983, signed by Inman and Foshaug, appointed Daniel Strohmeier as: manager of P Quad Company Trust with the authority to oversee the general business operations of the trust, which authority shall include the power to issue checks to pay the general operating expenses of the trust business. This power shall be subject to the review of the Trustees, their officers and agents, and shall not include the right to sign and deliver deeds to trust property, to sign or acknowledge contracts, leases, or bills of sale on behalf of the trust or to incur indebtedness on behalf of the trust.
Prior to trial of this case in June 1991, Daniel Strohmeier had never heard of P Quad Company or met Jon J. Paulson. Daniel Strohmeier took no action and was not involved in any way with any of the functions of P Quad Company. A "Writing in Lieu of Meeting of the Trustees of P Quad Company," effective July 1, 1987, purported to remove Daniel Strohmeier as the managing director of P Quad Company *704 as of that date and replace him with Imelda Spaeth. Beginning in 1983 and continuing through 1986, Western Veterinary Company paid P Quad Company $ 2,500 per month for providing general veterinary services. Jon J. Paulson provided the services for which Western Veterinary Company made payments to P Quad Company. Western Veterinary Company also reimbursed P Quad Company for expenses for Jon J. Paulson's vehicles. Jon J. Paulson controlled the operations of Western Veterinary Company and P Quad Company. On June 14, 1985, the United States District Court for the District of Minnesota entered a Final Judgment of Permanent Injunction as to Cheri Moorhouse, Cheryl Foshaug, Marti Inman, Armageddon, and Parnell, enjoining them under sections 7402 and 7408 from "organizing or assisting in the organization of an abusive tax shelter plan or arrangement involving business trusts, and from engaging in any other similar conduct which interferes with the proper enforcement of the internal revenue laws of the United States." On November 16, 1985, the United States District Court for the District of Minnesota entered a Final Judgment of Permanent Injunction as to James L. and Joan M. Noske d.b.a. *705 Zako, holding that James and Joan Noske had engaged in conduct subject to penalty under section 6700 and enjoining them from organizing, assisting, selling, or otherwise promoting business trusts as abusive tax shelters. Joan Noske prepared the Paulsons' individual Federal income tax returns and the fiduciary income tax returns for Western Veterinary Company and P Quad Company, the two business trusts in this case. She did not, however, sign the returns as a preparer. The Paulsons' income tax return for 1986 reported the following: Trust distribution from P Quad
Company (Schedule E)
$ 15,760
Nonemployed compensation
1,250
Adjusted gross income
17,010
Itemized deductions
- 5,451
Personal and dependency exemptions
- 6,480
Taxable income
$ 5,079
The return was signed by Jon J. Paulson and Gloria Paulson "under duress" and dated April 13, 1987. P Quad Company filed a U.S. Fiduciary Income Tax Return (Form 1041) for the fiscal year ended October 31, 1986, and reported the following: Distribution income from Western
Veterinary Company Trust (Schedule E)
$ 21,720
Net business income (Schedule C)
28,031
Total income
49,751
Interest
- 2,341
Taxes
- 3,420
Fiduciary fees
- 4,532
Adjusted total income
$ 39,458
Income distribution deduction
-$ 39,400
Exemption
-100
Total distribution and exemptions
$ 39,500
Taxable income
-0-
*706 The Schedules K-1 attached to P Quad Company's income tax return for the year ended October 31, 1986, stated that the trust's income was distributed as follows: Jon J. Paulson (20%)
$ 7,880
Gloria J. Paulson (20%)
7,880
BBCA, Inc. (60%)
23,640
BBCA, Inc., purports to be a church and does not file income tax returns. The president of BBCA, Inc., from its inception in 1981 through the time of trial of this case in June 1991 was Joan Noske. At the time of trial of this case, petitioners claimed for the first time that they were entitled to net operating loss carryforwards from years prior to the year in issue. Petitioners never filed a motion to amend their petitions to make this claim, although they were aware of the need to do so no later than June 1990. ULTIMATE FINDINGS OF FACT P Quad Company was a sham entity having no independent existence apart from Jon J. Paulson. The Paulsons are taxable on income reported by P Quad Company for 1986. The Paulsons underpaid their income tax liability for 1986, and the underpayment was due to negligence and intentional disregard of rules and regulations. The position taken on the Paulsons' income tax return was not taken in *707 good faith and was not based on substantial authority. OPINION The material facts in these cases and the applicable law are the same as facts found and authorities discussed in Paulson v. Commissioner, T.C. Memo 1991-508, dealing with the tax liability of the Paulsons for 1984 and 1985. Respondent requested that trial of these cases be continued until such time as the decision in the case involving the Paulsons' liability for 1984 and 1985 could operate as collateral estoppel. See, e.g., Lavern Scherping v. Commissioner, T.C. Memo 1991-388; Loren and Jane Scherping v. Commissioner, T.C. Memo 1991-384. Petitioners objected to continuance, and we gave them the benefit of the doubt and proceeded with trial of these cases. The evidence presented at trial, however, merely established more clearly that respondent's determinations should be sustained. We see no reason, therefore, to belabor the well-established law applicable to these cases. See United States v. Cumberland Public Service Co., 338 U.S. 451, 94 L. Ed. 251, 70 S. Ct. 280 (1950); Gregory v. Helvering, 293 U.S. 465, 79 L. Ed. 596, 55 S. Ct. 266 (1935); Zmuda v. Commissioner, 79 T.C. 714, 719 (1982), *708 affd. 731 F.2d 1417 (9th Cir. 1984); Markosian v. Commissioner, 73 T.C. 1235, 1241 (1980); Furman v. Commissioner, 45 T.C. 360, 364 (1966), affd. per curiam 381 F.2d 22 (5th Cir. 1967); Keith and Cheryl Chase v. Commissioner, T.C. Memo 1990-615; Robert C. and Ruth L. Chase v. Commissioner, T.C. Memo 1990-164, affd. 926 F.2d 737 (8th Cir. 1991). During trial of these cases, certain evidence was produced substantiating deductible business and personal expenses. Respondent has now conceded those deductions that have been established and has agreed that the business deductions, although originally claimed on P Quad Company's tax return, should be allowed to the Paulsons to the extent substantiated. The vague testimony of the Paulsons and of Joan Noske concerning other deductions claimed but not conceded by respondent was unsupported by any reliable documents and was generally unpersuasive. Petitioners have not proven that they are entitled to any additional deductions. Although they inundated the Court with documents prior to trial, petitioners failed *709 to move to amend their petition to claim a net operating loss carryforward. No reliable evidence of the amount of such loss was produced, although the Court indicated that a decision on this issue would take into account the opinion of the Court for 1984 and 1985, T.C. Memo 1991-508. As appears from that opinion, the net operating loss claim was not properly raised in the earlier case, and the evidence there was similarly inadequate to establish the amount of any such loss. A fortiori, no allowance for a net operating loss may be made in this subsequent year. Respondent also determined that Jon J. Paulson is liable for self-employment tax on the income reported by P Quad Company. Petitioners argue that most of that income was due to sales of drugs and not to services rendered (i.e., earned income). The tax imposed by section 1401, however, applies to the gross income, less deductions, derived by any individual from a trade or business. Sec. 1402(a). That tax does not apply only to compensation for services. Respondent's determination on this issue is sustained. Prior to the establishment by petitioners of the so-called business trust promoted by the Noskes, *710 various courts had held that attempts to minimize or avoid taxation of professional income by transfers of assets to trusts would be ineffective. See, e.g., Hanson v. Commissioner, 696 F.2d 1232 (9th Cir. 1983); Schulz v. Commissioner, 686 F.2d 490 (7th Cir. 1982); Vnuk v. Commissioner, 621 F.2d 1318 (8th Cir. 1980); Vercio v. Commissioner, 73 T.C. 1246 (1980); Wesenberg v. Commissioner, 69 T.C. 1005 (1978). Prior to the time that she prepared petitioners' tax returns for 1986, Joan Noske had been enjoined by the United States District Court from promoting business trusts as abusive tax shelters. The conclusion is inescapable that petitioners' persistence at the time they filed their 1986 income tax returns was due to negligence and intentional disregard of rules and regulations. They cannot avoid the additions to tax for negligence under section 6653(a) or for substantial understatement of income tax under section 6661. Should petitioners pursue these claims in the future, they may find themselves liable for a penalty in an amount not exceeding $ 25,000 under section 6673, inasmuch *711 as the claims are groundless and frivolous. To take account of the deductions now conceded by respondent and to reflect our resolution of respondent's alternative positions, Decisions will be entered under Rule 155. Footnotes
*. 50 percent of the interest due on $ 19,248. ** 50 percent of the interest due on $ 23,840.↩