**Jon J. PAULSON; Gloria J. Paulson, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 92–2750.

United States Court of Appeals, Eighth Circuit.

Submitted April 22, 1993.

Decided May 3, 1993.

Jon J. Paulson, Gloria J. Paulson, appellants pro se.

James A. Bruton, Washington, DC (James A. Bruton, Gary R. Allen, Bruce R. Ellisen and William J. Patton, Washington, DC, on the brief), for appellee.

Before FAGG, BEAM, and HANSEN, Circuit Judges.

PER CURIAM.

Jon J. Paulson and Gloria J. Paulson, hus-

band and wife, appeal from the tax court's[1] decision sustaining deficiencies assessed by the Commissioner in their federal income taxes for the years 1984 and 1985. We affirm.

Prior to September 1983, Jon Paulson practiced veterinary medicine in a partnership called Western Veterinary Service (WVS). On the advice of James and Joan Noske, the partners changed the form of their business from a partnership to a business trust in the fall of 1983, creating Western Veterinary Company (WVC).[2] The trustees named in WVC's declaration of trust were Armageddon, Inc., and Parnell, Inc., both South Dakota nonprofit corporations.

In addition to his veterinary practice, Jon Paulson raised livestock. Also in September 1983, Paulson transferred his interest in his livestock operation and in WVC to P Quad. In exchange, the Paulsons received one hundred percent of the shares of P Quad's trust certificates. P Quad had been established in April 1983 by a declaration of trust similar to the one that established WVC. Armageddon and Parnell were named as P Quad's trustees. The trust was designed to operate as a common law or Massachusetts trust—a separate unincorporated legal entity for doing business.

On April 11, 1989, the Commissioner issued a notice of deficiency to the Paulsons for tax years 1984 and 1985, assessing back taxes and penalties. The Paulsons responded by filing a petition contesting the alleged deficiencies and raising a statute of limitations defense. The tax court agreed with the Commissioner and found that P Quad was a sham entity and that the Paulsons should be taxed on its receipts; determined that the statute of limitations had not expired; denied a motion made by the Paulsons on the first day of trial to amend the pleadings to allow a claim for a net operating loss carryforward; and sustained the imposition of self-employment taxes on them for income P Quad earned. Paulsons appeal each of these decisions by the tax court.

■ Whether P Quad is a sham entity lacking in economic substance is a question of fact. *See United States v. Cumberland Pub. Serv. Co.*, 338 U.S. 451, 454, 70 S.Ct. 280, 281, 94 L.Ed. 251 (1950). Reviewing the findings of fact for clear error, we will sustain the tax court's findings if they are "plausible in light of the record viewed in its entirety." *Moser v. Commissioner*, 914 F.2d 1040, 1044 (8th Cir.1990). Upon review of the record, we conclude the tax court did not clearly err by finding P Quad was a sham entity lacking in economic substance. At trial, Cheryl A. Foshaug and Marti Inman, the presidents of Armageddon and Parnell, trustees for both P Quad and WVC, testified that they had never heard of either entity and had not performed any act for these entities. They had no management authority, and their primary duty was to sign blank slips of paper. This evidence supports the tax court's finding that P Quad was, in reality, simply a paper entity wholly without economic substance. *See Chase v. Commissioner*, 926 F.2d 737 (8th Cir.1991). Paulsons's other arguments challenging the tax court's finding that P Quad was a sham entity are foreclosed by *Chase*.

■ The Paulsons next argue the tax court erred by rejecting their claim that the deficiencies were barred by the three-year statute of limitations. Relying on *Fendell v. Commissioner*, 906 F.2d 362 (8th Cir.1990), the Paulsons contend that the Commissioner was barred from making any assessment against them which resulted in an adjustment to P Quad's tax for the period prior to November 1, 1985, because the three-year limitations period for such assessments expired on November 1, 1988. The tax court found *Fendell* distinguishable on the ground that the trust in that case was a separate, viable entity, while P Quad is a sham that is

---

1. The Honorable Lawrence A. Wright, United States Tax Court Judge.

2. In 1985, the United States District Court for the District of Minnesota found that by organizing and promoting the use of business trusts, the Noskes had engaged in the promotion of abusive tax shelters, enjoined them from continuing this activity, and ordered them to provide the IRS with the names and addresses of all 186 business trusts on file with the Minnesota Secretary of State that listed Armageddon and Parnell as corporate trustees. WVC and P Quad were among the trusts the Noskes identified.

to be disregarded for tax purposes. The tax court also noted that *Fendell* focused on the source of the income, and determined that Paulson was the sole source of P Quad's income. We agree with the tax court and believe it drew a valid distinction between *Fendell* and the instant case. *See Siben v. Commissioner,* 930 F.2d 1034, 1037–38 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 429, 116 L.Ed.2d 449 (1991).

▪ The Paulsons maintain that the tax court erred by denying their motion to amend the pleadings to claim a net loss carryforward to offset their taxable income for the years 1984 and 1985. The tax court denied the motion because the Paulsons failed to offer a satisfactory explanation as to why they waited until the first day of trial to raise this issue when they claimed to have been aware of it since they filed their petition; and because allowing the amendment would have denied the Commissioner an opportunity to verify or controvert the evidence proffered in support of the claim, substantially prejudicing the Commissioner. We find no abuse of discretion in this ruling. *See Jostens, Inc. v. Commissioner,* 956 F.2d 175, 177 (8th Cir.1992).

▪ Finally, the Paulsons argue that the tax court erred in subjecting them to self-employment taxes on the basis of P Quad's gross receipts because seventy-five percent of those receipts came from the sale of drugs, not the provision of veterinary services. This argument is not supported by the record. Moreover, we note that the income the Paulsons received through P Quad is attributable to two sources: the veterinary services Jon Paulson provided to WVC and the cattle business he ostensibly transferred to P Quad. This income falls within the statutory definition of earnings from self-employment. *See* 26 U.S.C. §§ 1401, 1402; *Chase,* 926 F.2d at 739–40.

Accordingly, we affirm.