T.C. Memo. 2002-137

UNITED STATES TAX COURT


STEVE M. NORTON AND KHRISTINE NORTON, ET AL.,[1]
Petitioners <u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 6084-99, 6085-99,     Filed May 31, 2002.
       6086-99, 15498-99,
       15499-99.


<u>William A. Cohan</u>, for petitioners.

<u>Stephen P. Baker</u>, for respondent.

---

[1] Cases of the following petitioners are consolidated herewith: South Denali Lands Trust, docket No. 6085-99; Denali Company Trust, docket No. 6086-99; Denali Company Trust, docket No. 15498-99; and Steve M. Norton and Khristine Norton, docket No. 15499-99.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  In these consolidated cases, respondent determined the following deficiencies in, additions to, and penalties on petitioners' Federal income taxes:

| Petitioners | Year | Deficiency | Additions to Tax Sec. 6651(a)(1) | Penalty Sec. 6662(a) |
|---|---|---|---|---|
| Steve and | 1994 | $101,230 | $25,457 | $20,246 |
| Khristine | 1995 | 51,512 | 5,752 | 10,302 |
| Norton | 1996 | 71,217 | -0- | 14,243 |
| | | | | |
| Denali Co. | 1994 | 119,980 | 29,995 | 23,996 |
| Trust | 1995 | 65,127 | 16,282 | 13,025 |
| | 1996 | 77,351 | -0- | 15,470 |
| | | | | |
| South Denali | | | | |
| Lands Trust | 1994 | 414 | 104 | 83 |

Unless otherwise stated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are:  (1) Whether income reported by the South Denali Lands Trust and Denali Company Trust is includable in the gross income of Mr. and Mrs. Norton; (2) whether Mr. and Mrs. Norton are liable for additions to tax for failure to file a tax return pursuant to section 6651(a)(1); (3) whether Mr. and Mrs. Norton are liable for accuracy-related penalties pursuant to section 6662(a); and (4) whether Mr. and Mrs. Norton are liable for penalties imposed under section 6673.

FINDINGS OF FACT

Some facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners Steve M. Norton (Mr. Norton) and Khristine Norton (Mrs. Norton), husband and wife, resided in Palmer, Alaska, at the time they filed their petitions. Petitioners South Denali Lands Trust and Denali Company Trust had mailing addresses in Palmer, Alaska, at the time of the filing of the petitions.

Mr. Norton is a general contractor in the construction business. He operated a sole proprietorship under the name of Steve Norton Enterprises (SNE). In 1973, he moved to Alaska from Oregon. In the early 1980s, Mr. Norton purchased residential real estate in Alaska for income and investment purposes. Due to a downturn in the State's economy, his rental units became vacant, the value of his real estate sharply decreased, and Mr. Norton could not find any contract work. As a result, almost all of the real estate that Mr. Norton owned was foreclosed upon, and, in 1987, Mr. and Mrs. Norton filed a bankruptcy petition.

In 1993, Mr. Norton went to a presentation at his church by Lonnie Crockett (Mr. Crockett) concerning trust[2] programs. Mr. Norton attempted to consult his attorney about the trust

_____

[2] For convenience, we use the terms "trust" and "trustee". The use of such terms is not intended to be conclusive as to characterization for tax purposes.

programs, but the attorney was not knowledgeable in that area. Mr. Norton instead reviewed Mr. Crockett's publications and consulted with his sister-in-law, Kim Norton, with regard to whether to purchase the trusts. Mr. Norton did not consult the Internal Revenue Service (IRS) as to the tax consequences of participating in the trusts.

Mr. Norton purchased three trust programs from Mr. Crockett for $3,500 to $8,500 each: Denali Company Trust, South Denali Lands Trust, and Finger Lake Holding Trust.[3] Mr. Norton also paid a yearly fee of $1,500 to remain in Mr. Crockett's trust program. For each of these three trusts, Mr. Crockett and Ben Owens (Mr. Owens) were appointed cotrustees. Mr. Owens resides in Palmer, Alaska.

Mr. Norton initially met Mr. Owens through his church in the late 1980s. Mr. Owens was an acquaintance of Mr. Norton's brother, David Norton. Mr. Norton and Mr. Owens became better acquainted in 1992 when Mr. Owens sought Mr. Norton's advice on a family matter, and when Mr. Owens joined Amway after Mr. Norton's introduction. Mr. Norton appointed Mr. Owens as a trustee due to his "impeccable character", his tendency to make conservative

---

[3] Mr. Norton is the trustee of several other trusts, including the Buffalo Contracting Trust, the Clement's Family Trust, the Nicholas and Lake Family Trust, and the North Fork Trust. Mr. Norton created another trust named the 2880 Papa Trust, but did not carry out his intention to grant assets to the trust.

decisions, and his experience in the construction business. Before accepting the position, Mr. Owens went to a presentation by Mr. Crockett and read Mr. Crockett's publications. Mr. Owens accepted the position after reading a "hold harmless" clause, which protects the trustee from the fraudulent behavior of others.

As trustee, Mr. Owens would frequently visit and call the offices of SNE. Mr. Owens would provide advice to SNE on how to diversify (i.e., move from residential to commercial construction projects) and how to seek payment, and would be consulted if SNE wanted to make a large decision; i.e., involving more than $10,000 (large projects). Mr. Owens would confer with Mr. Crockett monthly and would rely on Mr. Crockett's advice on the trusts because Mr. Owens perceived Mr. Crockett to be more educated on the application of the trusts. For his services as trustee, Mr. Owens was paid $300 each year per trust.

Mr. Owens and Mr. Crockett could be removed from their positions as trustees by David Norton. Mr. and Mrs. Norton appointed David Norton to be the protector of all three trusts. As protector, he could fire Mr. Owens or Mr. Crockett and appoint new trustees at his discretion. David Norton, however, would consult Mr. and Mrs. Norton about replacing a trustee.

Mr. Owens is employed fulltime as an estimator for commercial construction projects by Architectural Roofing and

Siding.  On the side, Mr. Owens assists in the sale of metal roofing and siding for residential construction projects through Northern Enterprises, and works miscellaneous construction-related jobs (i.e., building houses, putting on roofs, framing houses, working on concrete projects).  Mr. Owens would sell materials for Northern Enterprises to SNE on some construction projects and receive a 5-percent commission on these sales. Northern Enterprises is a trust in which Mr. Owens owns one share.  The beneficiary of the Northern Enterprises trust is the Fall Creek Company Trust, in which Mr. Owens' children are the beneficiaries.[4]  Additionally, when not acting as trustee, Mr. Owens would perform subcontract work for SNE.

Finger Lake Holding Trust

The Finger Lake Holding Trust owns the house in which Mr. Norton and his family currently reside.  The trustees are Mr. Owens and Mr. Crockett.  The protector of the trust is David Norton.  The beneficiaries of this trust are Mr. and Mrs. Norton and their children.

South Denali Lands Trust

The South Denali Lands Trust was formed in 1993.  This trust owns one duplex that was formerly the residence of Mr. Norton and

---

[4]  Mr. and Mrs. Norton sent $70,000 to the Fall Creek Company Trust in order to purchase railroad bonds from World Contractual Services (WCS) in Salt Lake City.  Mr. Owens was in charge of the Norton purchase; Mr. Norton does not know what Fall Creek does, except that Mr. Owens is involved in its business.

his family.  The duplex provides rental income.  The term of the trust is 20 years.  The trustees are Mr. Owens and Mr. Crockett. Both trustees and the Finger Lake Holding Trust are signatories on the bank account for the trust.  The protector of the trust is David Norton.  The beneficiary of this trust is the Finger Lake Holding Trust.  Mr. Norton serves as general manager of the trust.  As manager, Mr. Norton would handle the daily activities of the trust.  Mr. Norton's responsibilities did not change with regard to these daily activities because of the South Denali Lands Trust.

The South Denali Lands Trust tax return for 1994 was received by respondent on January 4, 1996.  The tax return reported no taxable income.  In the notice of deficiency to the South Denali Lands Trust, respondent disallowed a depreciation deduction in 1994 because it failed to establish the basis of the property claimed to have been used in the business, thereby increasing the net rental income.  Additionally, respondent imposed an addition to tax under section 6651(a)(1) for failure to file and an accuracy-related penalty under section 6662(a).

Respondent received Mr. and Mrs. Norton's 1994 tax return on January 3, 1996.  The tax return did not report any rental income from the South Denali Lands Trust.  In the notice of deficiency to Mr. and Mrs. Norton, respondent increased their income to account for the rental income from the South Denali Lands Trust.

Respondent asserted that, alternatively: (1) The trust arrangements are a sham and are disregarded for tax purposes; (2) the South Denali Lands Trust is a grantor trust whose income is taxable to Mr. and Mrs. Norton; and (3) the assignment of income to the South Denali Lands Trust is not recognized for tax purposes and is taxable to Mr. and Mrs. Norton. Additionally, respondent imposed an addition to tax under section 6651(a)(1) for failure to file and an accuracy-related penalty under section 6662(a).

Denali Company Trust

The Denali Company Trust was created in 1993 and is doing business as SNE. The Denali Company Trust owns trucks, equipment, and tools. These items were owned and used in the construction business by Mr. and Mrs. Norton and then transferred to the Denali Company Trust. Mr. Owens and Mr. Crockett are the trustees and the signatories on the bank account. David Norton is the protector of the trust. The beneficiaries are the Crystal Diversified Trust and Michael André. Mr. Norton is the general manager. Mr. Norton's day-to-day conduct of business has not changed due to the formation of the Denali Company Trust, except that the trust required Mr. Owens' permission on large projects. The trustees approved a resolution that would allow Mr. Norton the following duties as manager:

> * * * lend his name, reputation, goodwill, and good
> credit standing, licenses and authorizations etc. to

the advancement of the business endeavors of Denali Co. Trust.  Additional, both as an individual and a manager, Steve M. Norton will work to secure credit for the business affairs of Denali Co. Trust.  To accommodate this, from time to time assets may be transferred, as an assignment only and not as ownership to Steve M. Norton for the purpose of obtaining a credit line for construction, materials, purchases, and other needs as approved by the board.

The money received for services by SNE was deposited into the Denali Company Trust.  The funds were then transferred from the Denali Company Trust to SNE's business account so that Mr. Norton could sign checks in order to pay bills and to purchase personal items.  The bookkeeping was maintained by Mrs. Norton.

Mr. Crockett recommended having Crystal Diversified, a foreign trust, as a beneficiary of the Denali Company Trust.  Mr. and Mrs. Norton and Mr. Owens do not know and have never talked to Michael André, trustee of Crystal Diversified.  If not received directly, Crystal Diversified would receive the funds from the Denali Company Trust through the use of intermediaries unknown to Mr. and Mrs. Norton.  Crystal Diversified would make foreign investments and distribute the investment to the Finger Lake Holding Trust at the expiration of the trust.  Mr. Crockett and Crystal Diversified would take a percentage of the money invested for services performed.

Under the conditions of the trust, Mr. and Mrs. Norton are not entitled to know where their money is invested and receive no regular statements of account.  Throughout the term, gifts may be

received from time-to-time, but the trust does not allow Mr. and Mrs. Norton and Mr. Owens to have any control over when their money would be returned during the term.  The trust provides no assurance as to when the money will be received except at the end of the term of the trust of 20 years.

During the tax years at issue, SNE had gross sales of over $1 million each year.  SNE did not report any amounts, and no tax was paid on its profit because it was reported by the Denali Company Trust.

On its 1994 return received on January 4, 1996, the Denali Company Trust reported an adjusted gross income of $210,314.  The same amount was deducted as an income distribution to Crystal Diversified; therefore, the Denali Company Trust reported zero taxable income.[5]  In the notice of deficiency, respondent disallowed certain business expense deductions and the income distribution deduction because the trust failed to substantiate the deductions.  Additionally, respondent imposed an addition to tax under section 6651(a)(1) for failure to file and an accuracy-related penalty under section 6662(a).

---

[5]  A promissory note was issued from the Denali Company Trust to Michael André, as trustee of Crystal Diversified, for $210,014 on Feb. 18, 1995, because Denali Company Trust did not have cash in its account to pay the amount allegedly due to Crystal Diversified.  Payments were made on this note starting on Feb. 27, 1996, when cash became available.

On their 1994 return received on January 3, 1996, Mr. and Mrs. Norton did not report any income from the Denali Company Trust. In the notice of deficiency, in addition to the imposition of an addition to tax under section 6651(a) and an accuracy-related penalty under section 6662(a), respondent increased their self-employment income by the net business income of Denali Company Trust. Respondent determined that, alternatively: (1) The Denali Company trust is a sham with no economic substance; (2) the Denali Company Trust is a grantor trust; and (3) Mr. and Mrs. Norton's attempted assignment of income to the Denali Company Trust is not recognized for tax purposes.

On its 1995 return received on September 23, 1996, Denali Company Trust reported an adjusted gross income of $116,752. It deducted the same amount, of which $116,452 was treated as an income distribution. As a result, it did not report any taxable income in 1995.

On its 1996 return, Denali Company Trust reported an adjusted gross income of $171,329. It deducted the same amount, of which $171,029 was treated as an income distribution. As a result, it did not report any taxable income in 1996.

In the notice of deficiency for 1995 and 1996, respondent disallowed business expense deductions for depreciation, legal and professional fees, and seminars, because respondent

determined that the Denali Company Trust did not substantiate the amounts. Additionally, respondent imposed an addition to tax under section 6651(a)(1) for failure to file in 1995 and accuracy-related penalties under section 6662(a) for 1995 and 1996.

On their 1995 and 1996 tax returns received on September 23, 1996, and June 13, 1997, respectively, Mr. and Mrs. Norton did not report any of the income reported by the Denali Company Trust. In the notice of deficiency for 1995 and 1996, respondent increased their self-employment income by the net business income of Denali Company Trust. Respondent determined that, alternatively: (1) The Denali Company trust is a sham with no economic substance; (2) the Denali Company Trust is a grantor trust; and (3) Mr. and Mrs. Norton's attempted assignment of income to the Denali Company Trust is not recognized for tax purposes. Respondent also imposed an addition to tax under section 6651(a)(1) for failure to file in 1995, and accuracy-related penalties under section 6662(a) for 1995 and 1996.

OPINION

I.  Is Income Reported by the South Denali Lands Trust and Denali Company Trust Includable in the Gross Income of Mr. and Mrs. Norton?

Petitioners have the burden of proving that they are not liable for the deficiencies determined by respondent.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[6]

Petitioners argue that the trust documents provide a sufficient description of the trust and the trustees' duties, and they are, therefore, legally enforceable because the form cannot be ignored.  Petitioners contend that Mr. and Mrs. Norton had an established business purpose for altering the form of SNE from a sole proprietorship to a trust in order to protect their assets from a decline in the economy.  Additionally, petitioners argue that the trusts pass the economic substance test because, in petitioners' view, the trusts have an independent trustee; Mr. Norton's relationship to the property differed materially after trust formation; an economic interest passed to the beneficiaries; and Mr. and Mrs. Norton honored the restrictions imposed by the trusts.

_____

[6]  Cf. sec. 7491 is effective for court proceedings arising in connection with examinations commencing after July 22, 1998. Respondent contends that sec. 7491 is inapplicable because the examinations commenced before July 22, 1998.  Petitioners do not contend that their examinations began after this date or that sec. 7491 is applicable to their case.

Respondent presented alternative arguments as to why Mr. and Mrs. Norton should be taxed individually on the incomes reported by the trusts. First, respondent argues that the trusts are shams and should be disregarded for tax purposes because the trusts lack economic substance. Second, respondent argues that the South Denali Lands and Denali Company trusts are grantor trusts. Third, respondent argues that income of the South Denali Lands and Denali Company trusts is taxable to Mr. and Mrs. Norton on assignment of income principles.

A fundamental principle of tax law is that income is taxed to the person who earns it. Commissioner v. Culbertson, 337 U.S. 733, 739 (1949); Lucas v. Earl, 281 U.S. 111, 114 (1930); Johnston v. Commissioner, T.C. Memo. 2000-315. An assignment of income to a trust is ineffective to shift the tax burden from the taxpayer to a trust when the taxpayer controls the earning of the income. Vnuk v. Commissioner, 621 F.2d 1318, 1320 (8th Cir. 1980), affg. T.C. Memo. 1979-164.

The Commissioner is not required to apply the tax laws in accordance with the form a taxpayer employs where that form is a sham or inconsistent with economic reality. Diedrich v. Commissioner, 457 U.S. 191, 195 (1982); Higgins v. Smith, 308 U.S. 473, 477 (1940). Where an entity is created that has no real economic effect and which affects no cognizable economic relationships, the substance of a transaction involving this

entity will control over the form.  Zmuda v. Commissioner, 731 F.2d 1417, 1420 (9th Cir. 1984), affg. 79 T.C. 714, 719 (1982); Markosian v. Commissioner, 73 T.C. 1235, 1241 (1980).  These principles apply even though an entity may have been properly formed and have a separate existence under local law.  Zmuda v. Commissioner, 79 T.C. at 720; Vercio v. Commissioner, 73 T.C. 1246, 1253 (1980).

Whether a trust lacks economic substance for tax purposes is a factual question to be decided on the basis of the facts before the Court.  Paulson v. Commissioner, T.C. Memo. 1991-508, affd. per curiam 992 F.2d 789 (8th Cir. 1993) (citing United States v. Cumberland Pub. Serv. Co., 338 U.S. 451 (1950)).

We consider the following factors to determine whether a purported trust lacks economic substance for Federal income tax purposes:  (1) Whether the taxpayer's relationship, as grantor, to the property differed materially before and after the trust's formation; (2) whether the trust had an independent trustee; (3) whether an economic interest passed to other beneficiaries of the trust; and (4) whether the taxpayer felt bound by any restrictions imposed by the trust itself or the law of trusts. Markosian v. Commissioner, supra at 1243; Hanson v. Commissioner, T.C. Memo. 1981-675, affd. per curiam 696 F.2d 1232 (9th Cir. 1983).  After considering each factor, we hold that the South

Denali Lands Trust and the Denali Company Trust lacked economic substance and are shams for tax purposes.

   A.   Did the Taxpayer's Relationship, as Grantor to the Property, Differ Materially Before and After the Formation of the Trusts?

We find that Mr. and Mrs. Norton's relationship, as grantors to the property, did not differ materially before and after the formation of the trusts.[7]

Before the formation of the trusts, Mr. Norton operated SNE as a sole proprietorship.  Mr. Norton testified that, after the formation of the trusts, his day-to-day conduct of SNE was the same as before the formation of the trusts.  Additionally, with regard to the Denali Company Trust, the trustees approved a resolution that allowed Mr. Norton to "lend" his name, reputation, goodwill, good credit standing, licenses, and authorizations to the Denali Company Trust.  In essence, the Denali Company Trust was SNE and operated as such.  Further, the Denali Company Trust would transfer its funds to SNE's business account that would allow Mr. Norton to sign checks in order to pay bills and purchase items for business and personal use.  Mr. Norton still had access to SNE's funds, even after SNE's assets were transferred to the Denali Company Trust.

---

[7]   Mr. and Mrs. Norton are listed as the grantors on the South Denali Lands Trust.  Crystal Diversified Trust is listed as the grantor of the Denali Company Trust.  The parties stipulated that Mr. and Mrs. Norton are the grantors of the Denali Company Trust.

The only restriction that the trust placed on Mr. Norton's decisions with regard to SNE was that he was required to obtain authorization from Mr. Owens on large projects.  During trial, Mr. Owens testified that he would not require or demand that SNE operate in a certain fashion but would merely provide advice. Mr. Owens did not forbid Mr. Norton from doing any activities with SNE.  We find that the authorization on large projects for SNE did not effect a material change in Mr. Norton's relationship to and control of the business or assets of SNE.

B.    Did the Trust Have an Independent Trustee?

On the basis of the record, we find that Mr. Owens and Mr. Crockett were not independent trustees and that they did not perform any significant duties or exercise any significant control or power over the trusts.  The failure of a nominal trustee to have any meaningful role in the operation of the trust has been repeatedly cited by this Court as evidence that the entity lacks economic substance.  See, e.g., Zmuda v. Commissioner, 79 T.C. at 720; Para Techs. Trust v. Commissioner, T.C. Memo. 1994-366, affd. without published opinion sub nom. Anderson v. Commissioner, 106 F.3d 406 (9th Cir. 1997).

First, Mr. Norton exercised control over the trustees through his brother, David Norton, who was the protector of the trusts.  David Norton would consult Mr. Norton with regard to replacing the trustees.  For example, if Mr. Norton disagreed

with the trustees, Mr. Norton, through his brother, could fire them and appoint a new trustee who would be more aligned with his interests. In this way, Mr. Norton was able to control the actions of the trustees.

Second, the record does not establish that Mr. Owens would perform his duties as trustee independently. Besides the comparatively minor annual fee that Mr. Owens received as trustee, Mr. Owens received other financial benefits from Mr. and Mrs. Norton that could have influenced the decisions Mr. Owens would make as trustee. Mr. Owens sold products to, earned commissions from, and performed subcontract labor work for SNE. Additionally, Mr. Owens received money from Mr. and Mrs. Norton to purchase railroad bonds through his trust, the Fall Creek Trust.

Third, Mr. Norton had access to the funds deposited in the Denali Company Trust when the funds were transferred back to SNE. As discussed above, Mr. Owens did not restrict Mr. Norton's use of these funds.

C.   Did an Economic Interest Pass to Other Beneficiaries of the Trusts?

We find that an economic interest did not pass to beneficiaries of the trusts other than Mr. Norton and his family. The ultimate beneficiaries of the South Denali Lands Trust and the Denali Company Trust are Mr. and Mrs. Norton and their children. The Crystal Diversified and Finger Lake Holding Trusts

acted merely as intermediaries which passed the economic interests from the trusts ultimately to Mr. and Mrs. Norton and their family.

    D.    <u>Did the Taxpayer Feel Bound by Any Restrictions Imposed by the Trust Itself or the Law of Trusts?</u>

We find that, in practice, Mr. Norton was not bound by any restrictions imposed by the trust instruments or the law of trusts as to the use of transferred property. Although Mr. Norton claimed that he needed Mr. Owens' permission on large projects, Mr. Owens testified that he did not forbid Mr. Norton from doing any activity, but merely gave advice. Mr. Norton, therefore, was able to use the property as he desired. Mr. Norton's unrestricted use of the property of the trusts demonstrates that Mr. Norton was not, in fact, restricted in any meaningful manner.

Additionally, petitioners presented no credible evidence that any purpose other than tax avoidance was served by the trusts to which Mr. Norton transferred his assets. Although Mr. and Mrs. Norton argue that the main purpose of the trusts was to protect their assets, we find it implausible that they would relinquish control over a substantial amount of their income to a foreign trust and trustee with whom they and Mr. Owens had no contact if their true purpose was to protect these assets.

We conclude that the South Denali Lands Trust and the Denali Company Trust lacked economic substance for Federal tax purposes.

Accordingly, we hold that the trust structures of the South Denali Lands Trust and the Denali Company Trust shall not be respected for Federal income tax purposes, and the income from the South Denali Lands Trust and the Denali Company Trust is taxable to Mr. and Mrs. Norton.

## II.  Are Mr. and Mrs. Norton Liable for Penalties Under Section 6662(a)?

Respondent determined that Mr. and Mrs. Norton are liable for accuracy-related penalties under section 6662(a) and (b)(1) for 1994, 1995, and 1996.  Section 6662(a) imposes a penalty in the amount of 20 percent on the portion of the underpayment to which the section applies.  As relevant to this case, the penalty applies to any portion of the underpayment that is attributable to negligence or disregard of the rules or regulations.  Sec. 6662(b)(1).  Negligence is any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Moreover, negligence has been described as the failure to exercise due care or the failure to do what a reasonable and prudent person would do under the circumstances.  Neely v. Commissioner, 85 T.C. 934, 947 (1985).  Disregard includes any careless, reckless, or intentional disregard of rules or regulations.  Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs. Once the Commissioner has determined an accuracy-related penalty pursuant to section 6662(b)(1), the taxpayer bears the burden of

proof as to such issue.  Bixby v. Commissioner, 58 T.C. 757, 791 (1972).  See supra note 6.

In researching the trusts before purchase, Mr. and Mrs. Norton read publications from Mr. Crockett, consulted an attorney who had no legal knowledge of trusts, and asked advice from their sister-in-law.  Mr. and Mrs. Norton did not contact the IRS or consult an attorney proficient in the area as to the legality of the trusts.  A reasonable and prudent person, under the circumstances, would have researched the legality of the scheme rather than rely on the word of the trust promoter.  Accordingly, we hold that Mr. and Mrs. Norton are liable for the accuracy-related penalties under section 6662(a).

III.  Are Mr. and Mrs. Norton Liable for Additions to Tax Under Section 6651(a) for Failure To File in 1994 and 1995?

Respondent determined that Mr. and Mrs. Norton are liable for additions to tax pursuant to section 6651(a)(1) for 1994 and 1995.  Section 6651(a)(1) imposes an addition to tax for failure to file a return on the date prescribed (determined with regard to any extension of time for filing), unless the taxpayer can establish that such failure is due to reasonable cause and not due to willful neglect.  The taxpayer has the burden of proving that the addition is improper.  Rule 142(a); United States v. Boyle, 469 U.S. 241, 245 (1985).  Mr. and Mrs. Norton offered no evidence showing that their failure to file was due to reasonable cause and not due to willful neglect.  Accordingly, we hold that

Mr. and Mrs. Norton are liable for the additions to tax under section 6651(a).

## IV. Are Mr. and Mrs. Norton Liable for Penalties Imposed Under Section 6673?

Respondent requests that we impose a penalty under section 6673 on Mr. and Mrs. Norton. Section 6673(a)(1) authorizes this Court to require a taxpayer to pay to the United States a penalty not to exceed $25,000 if the taxpayer took frivolous positions in the proceedings or instituted the proceedings primarily for delay. A position maintained by a taxpayer in the Tax Court is frivolous "if it is contrary to established law and unsupported by a reasoned, colorable argument for change in the law." Coleman v. Commissioner, 791 F.2d 68, 71 (7th Cir. 1986). A penalty is properly imposed when the taxpayer knew or should have known that his claim or argument was frivolous. See Hansen v. Commissioner, 820 F.2d 1464, 1470 (9th Cir. 1987).

We find that petitioners' arguments are frivolous. They have caused this Court to waste its limited resources on their erroneous views of the tax law which they should have known are completely without merit. In view of the foregoing, the Court will exercise its discretion under section 6673(a)(1) and require Mr. and Mrs. Norton to pay a penalty to the United States in the amount of $5,000.

In reaching all of our holdings herein, we have considered all arguments made by the parties, and, to the extent not mentioned above, we find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decisions will be entered under Rule 155</u>.