Tom H. WHEAT and Tilda Wheat,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

E. Philip GEMMER, Jr., and Jo Kathryn
Gemmer, Plaintiffs,

v.

UNITED STATES of America,
Defendants.

James R. GRAVES and Elizabeth
J. Graves, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Allan C. KING and Gloria G. King,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. A. Nos. 70-H-786 to 70-H-789.

United States District Court,
S. D. Texas,
Houston Division.

Jan. 18, 1973.

Charles J. Sullivan, Dyche, Wright, Sullivan, Bailey & King, Houston, Tex., for plaintiffs.

Anthony J. P. Farris, U. S. Atty., Houston, Tex., Scott P. Crampton, Asst. Atty. Gen., Washington, D. C., Jerome Fink, William W. Guild, Howard A. Weinberger, Attys., Tax Div., Dept. of Justice, Dallas, Tex., for defendant.

MEMORANDUM AND ORDER

CARL O. BUE, Jr., District Judge.

In these four consolidated actions the plaintiffs seek a refund of income taxes

and assessed interest as a result of the allegedly erroneous disallowance of certain deductions for their pro rata share of the net operating loss of an electing small business corporation under Subchapter S of the Internal Revenue Code pursuant to 26 U.S.C. § 7422(a) and 26 U.S.C. § 1346. In a direct attack on the propriety of plaintiffs' cause of action, the Government has moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P.

To capsule the undisputed facts, the plaintiffs are shareholders in a small business corporation, Student Housing, Inc. This corporation was formed on October 1, 1962, by ten shareholders, four of whom are plaintiffs in these lawsuits, for the purpose of constructing and operating student dormitories on various college campuses. At the time of incorporation, the shareholders executed an agreement entitled Stockholders' Agreement which provided, among other things, for shareholder contribution to the corporation's capital structure as a method for securing any additional corporate financing which might be needed to successfully conduct the intended business operations. Notwithstanding this method to secure additional financing, the corporation in 1963 through its officers employed an alternate method and made application for and duly received two loans in the amount of $285,585.89 from the Bank of Texas. The loans, which were represented by two promissory notes, were secured by chattel mortgages on the corporation's property and personal guarantees of the individual shareholders. The terms of these individual guarantees permitted the bank, in effect, to proceed directly against the individual guarantors upon default in the loan installment payments without the necessity of proceeding initially against the corporation or the collateral for the loans. In fact, however, the corporation never defaulted on the loan payments, and the shareholders were never called upon to pay any part of the loans. Further, the corporation's tax returns and financial statements reflected these loans as corporate obligations owing to the bank. The corporate records do not reflect any form of indebtedness owing to the plaintiffs.

In 1964 the corporation incurred an operating loss of $258,978.47. To reduce their individual tax liability each of the ten shareholders reported on his individual income tax return for 1964 a loss deduction of $25,897.84 as his pro rata share of the corporation's loss. This was computed on the assumption that the basis of their stock in the corporation included the two loans totaling $285,585.-89 which constituted an indebtedness owed to them by the corporation. However, to the shareholders' consternation and dissatisfaction each was allowed only a $3,782.46 loss deduction which was comparable to each shareholder's actual capital investment or stock ownership in the corporation.

In support of its motion for summary judgment the Government relies upon the documents which reflect the substance of the transactions between the Bank of Texas, the shareholders and the corporation. The Government then contends that, even assuming that the facts asserted by the plaintiffs are true, it is entitled to a judgment as a matter of law. It is the Government's position that the guarantees executed by the shareholders in reference to the corporate loans cannot create an indebtedness from the corporation to the shareholders as required by the statute for the deduction sought by plaintiffs to be allowable. This is necessarily true, it is argued, regardless of the intention of the parties at the time the loans were executed. In rebuttal to the motion for summary judgment, the plaintiffs contend that the shareholders lent their individual credit to the corporation for the purpose of securing the loans from the bank and guaranteed the loans only as a result of the initial Stockholders' Agreement. It is asserted that the various parties to these transactions—the shareholders, the bank and the corporation—intended that an indebtedness be created between the corporation and the shareholders.

Summary judgment is a useful tool to cut off litigation where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Shahid v. Gulf Power Co., 291 F.2d 422, 423 (5th Cir. 1961), rehearing denied, 298 F.2d 793 (5th Cir. 1961), cert. denied, 370 U.S. 923, 82 S.Ct. 1563, 8 L.Ed.2d 503 (1962). However, the Fifth Circuit Court of Appeals has wisely cautioned that "[s]ummary judgment is a lethal weapon, and courts must be mindful of its aims and targets and beware of overkill in its use." Brunswick Corp. v. Vineberg, 370 F.2d 605, 612 (5th Cir. 1967).

Subchapter S of the Internal Revenue Code which was enacted in 1958, permits shareholders of qualifying corporations to elect to pay taxes individually on the corporation's income. The provisions were designed for small corporations which seek the advantages of the corporate form of organization but who are reluctant to incur the double taxation which that form entails. The legislative intent was to permit "business to select the form of business organization desired, without the necessity of taking into account major differences in tax consequences." S.Rep.No.1983, 85th Cong., 2d Sess. 87 (1958), U.S.Code Cong. & Admin.News 4876. As a correlative procedure to the individual payment of taxes on the corporate income, the shareholders also are permitted to deduct on their individual income tax returns their proportionate share of the corporation's net operating loss. The intended result is to create a tax situation comparable to that encountered when operating losses are sustained by a partnership or sole proprietorship.

██ Necessarily, however, in view of the corporate form of organization, there is a limitation as to the deductible amount of a corporate operating loss which any shareholder can utilize for tax purposes. Thus the statute provides that:

(2) Limitation. — A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of—

(A) the adjusted basis . . . of the shareholder's stock in the electing small business corporation, determined as of the close of the taxable year of the corporation . . and

(B) the adjusted basis . . . of any indebtedness of the corporation to the shareholder, determined as of the close of the taxable year of the corporation . . . .

26 U.S.C. § 1374(c)(2). The legislative history reflects that the deductible net operating loss to any shareholder was limited "to the adjusted basis of the shareholder's investment in the corporation; that is, to the adjusted basis of the stock in the corporation owned by the shareholder and the adjusted basis of any indebtedness of the corporation to the shareholder." S.Rep.No.1983, 85th Cong., 2d Sess., U.S.Code Cong. & Admin. News 5008 (1958). Thus, the concept of indebtedness of the corporation to the shareholders as employed in the statute was intended to be comparable to actual capital investment by the shareholders. This construction of the statute is bolstered by the fact that it has been repeatedly held that "[t]he term 'indebtedness' implies an existing unconditional and legally enforceable obligation to pay." Tomlinson v. 1661 Corp., 377 F.2d 291, 295 (5th Cir. 1967); United States v. Virgin, 230 F.2d 880 (5th Cir. 1956); Gilman v. Commissioner, 53 F.2d 47 (8th Cir. 1931); 4A J. Mertens, The Law of Federal Income Taxation § 26.04 (1972 Rev.Ed.).

In Neal v. United States, 313 F.Supp. 393 (C.D.Cal.1970), a factual situation practically identical to that in the instant lawsuits was considered. The Court concluded after canvassing the legislative intent that a shareholder's contract of guaranty with corporate creditors is not tantamount to an indebtedness of the corporation to the shareholder

within the meaning of the statute. The Court's rationale was delineated as follows:

> [The corporation] owed nothing to its shareholders by reason of their endorsement, and it continued to owe nothing to them until and unless they paid part or all of the obligation, which they never did. While a sum of money may be payable upon a contingency, it becomes a debt only when the contingency has happened, the term "debt" being opposed to "liability." The fact that the granting of the loan by the creditor to the corporation was expressly conditional upon the personal guaranty of the individual shareholders, to the extent that they became primarily liable to the creditor as co-makers, has no bearing upon the "indebtedness" contemplated by Section 1374(c)(2)(B).

313 F.Supp. at 396. The latter Court relied upon three United States Tax Court decisions which similarly had concluded that personal guaranties by shareholders of corporate obligations were not equivalent to an indebtedness within the meaning of the statute. Perry v. Commissioner, 47 T.C. 159 (1966), aff'd, 392 F.2d 458 (8th Cir. 1968); Borg v. Commissioner, 50 T.C. 257 (1968); Raynor v. Commissioner, 50 T.C. 762 (1968).[1]

In order to circumvent these decisions, the plaintiffs are seeking to establish the requisite statutory "indebtedness" by including the Stockholders' Agreement in the loan transaction. However, this attempt to bolster their investment basis in the corporation cannot succeed. At the time of the execution of the Stockholders' Agreement there was no indebtedness within the meaning of the statute, and no such indebtedness could arise until such time as the shareholders were actually called upon to assume a real position in the loan transaction by paying part or all of the obligation owed to the bank. This situation never occurred. Until that time they were, at best, mere guarantors or sureties of the loans. *See* Putnam v. Commissioner, 352 U.S. 82, 77 S.Ct. 175, 1 L.Ed.2d 144 (1956); Raynor v. Commissioner, 50 T.C. 762 (1968); Graham v. San Antonio Machine and Supply Corp., 418 S.W.2d 303 (Tex.Civ.App.— San Antonio 1967, writ ref'd n. r. e).[2]

---

1. The law review commentators appear to be at odds with one another as to whether the statutory construction set forth in these recent decisions is "unduly restrictive" or the mandatory foreclosing of an "ingenuity to bolster basis." Landon, An Approach to Legislative Revision of Subchapter S, 26 Tax L.Rev. 799, 821 (1971); Rosenkranz, Subchapter S— An Illusory Promise?, 6 Ga.L.Rev. 109, 151 (1971). Nevertheless, this well-acknowledged construction of the statute appears to be consistent with the statutory purpose and legislative intent. Therefore, any shortcomings in the statute, if they exist at all, must be relegated to Congress for appropriate legislative revision. Additionally, it would appear that if the Court followed plaintiffs' proffered construction of the statute and construed these transactions as, in effect, loans, it would be a one-headed virtue—one-headed vice for the shareholders. It is apparently a risky transaction for shareholders to lend money directly to their electing small business corporation, since such a loan may be construed, under certain circumstances, as a second class of stock which would destroy the corporation's right to be considered a small business corporation for tax purposes. *See* Amory Cotton Oil Co. v. United States, 468 F.2d 1046 (5th Cir. 1972); Brennan v. O'Donnell, 322 F.Supp. 1069 (N.D.Ala.1971); Stinnett v. Commissioner, 54 T.C. 221 (1970); Goldstein, Corporate Indebtedness to Shareholders: "Then Capitalization" and Related Problems, 16 Tax L.Rev. 1 (1960).

2. Plaintiffs have cited several decisions as standing for the proposition that the term "indebtedness" as used in the statute should include the transaction in issue. Knetsch v. United States, 364 U.S. 361, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960); Helvering v. Sabine Transportation Co., 318 U.S. 306, 63 S.Ct. 569, 87 L.Ed. 773 (1943); Deputy v. Du Pont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 (1940); Commissioner v. Tennessee Co., 111 F.2d 678 (3d Cir. 1940). However, a close examination of these decisions reflects that they stand only for the proposition that the term "indebtedness" can have varying meanings in varying contexts with the result that it is necessary to probe the

724

The Court can only conclude from the case as submitted that there is no genuine issue as to any material fact and that the Government is entitled to a judgment as a matter of law. Accordingly, the Government's motion for summary judgment is granted.

Congressional intent in order to ascertain the intended meaning within any particular statute. The Court has done precisely that in this instance. These decisions are by no means inconsistent with the Court's conclusion.