F. HOWARD HITCHINS AND ESTHER E. HITCHINS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 23063–92.    Filed December 22, 1994.

*S. Byron Balbach, Jr.,* for petitioners.
*Anthony S. Gasaway,* for respondent.

OPINION

TANNENWALD, *Judge*: Respondent determined the following deficiencies in and additions to petitioners' Federal income tax:

| | | Additions to tax | | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6653(a)(1)(A) | Sec. 6653(a)(1)(B) | Sec. 6653(a)(1) [1] |
| 1986 | $12,840 | $642 | [2] | - - - |
| 1987 | 3,050 | 153 | [2] | - - - |
| 1988 | 2,137 | - - - | - - - | $107 |

[1] For returns due after Dec. 31, 1988, amended sec. 6653(a)(1) replaced former sec. 6653(a)(1)(A) and (B). Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100–647, sec. 1015(b)(2)(A), 102 Stat. 3342, 3569.
[2] Addition to tax is 50 percent of the interest due on the underpayment due to negligence.

After certain concessions, the issues remaining for decision are: (1) Whether petitioner F. Howard Hitchins' basis in a subchapter S corporation, under section 1366(d),[1] should reflect a debt owed to him by a subchapter C corporation and assumed by the S corporation in partial payment of its debt to the C corporation, and (2) whether petitioners are liable for additions to tax for negligence.

All of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Petitioners are husband and wife (hereinafter references to petitioner in the singular are to F. Howard Hitchins). They were residents of Rogers, Arkansas, at the time their petition was filed.

Petitioner was the founder and president of Champaign Computer Co. (CCC), and his wife was the secretary/treasurer of CCC. During the relevant years, CCC was engaged in the business of computer hardware and software sales, service and development, and as a dealer and distributor of Alpha Micro computer equipment and related software. During that

[1] All statutory references are to the Internal Revenue Code in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

same period, CCC's issued and outstanding stock was owned as follows:[2]

| Shareholder | Shares | Value |
|---|---|---|
| F. Howard Hitchins | 48 | $22,052.40 |
| Esther Hitchins | 48 | 22,052.40 |
| Randa Davis | 12 | 5,514.80 |
| Sharon Allen | 12 | 5,514.80 |
| James & Charlotte Hitchins | 8 | 3,678.80 |
| Richard Weinbrenner | 20 | 9,186.80 |

On August 24, 1985, petitioner and Scot Miller and his wife, Barbara (the Millers), entered into an agreement to develop and market a chemical database relating to the environmental impact of various chemicals. The agreement provided that development of the database structure and software would be undertaken by CCC and that the ownership of the database would be transferred to a company to be formed upon obtaining venture capital or the occurrence of sales. The agreement also provided that CCC would be reimbursed for its expenses in developing the database system. Pursuant to the agreement, ChemMultiBase Co., Inc. (CMB), a subchapter S corporation, was incorporated on September 30, 1986. Petitioners, collectively, were 50-percent shareholders in CMB. The remaining 50-percent interest was owned, collectively, by the Millers. Mr. Miller was the president of CMB, and petitioner was a director. Petitioners' basis in their CMB stock was $10,158.46.

In 1985 and 1986, CCC undertook development of the chemical database. In 1986, petitioner personally loaned a total of $34,000 to CCC to pay the operating expenses of CCC relating to the database project. The $34,000 was paid to CCC in five separate personal checks from petitioner. CCC "booked" the $34,000 loan as a "loan from shareholder" in its corporate books and records. No portion of the amounts constituting the $34,000 loan to CCC was paid to or deposited in any account of CMB. Nor were the amounts treated as loans from petitioner to CMB by petitioner, CCC, or CMB.

---

[2] The precise relationships among the shareholders is not revealed by the record, but CCC's Federal income tax return for the period June 1, 1986, to May 31, 1987, states that petitioner owned 100 percent of its stock directly or by attribution.

On October 1, 1986, CCC invoiced CMB in the amount of $65,645.39 for expenses incurred by CCC relating to the development of the chemical database. The majority of expenses were for research and development.

CMB paid the invoice by issuing a promissory note dated October 1, 1986, payable to CCC in the amount of $65,645.39. Subsequently, CMB paid the note by a combination of currency and CMB's agreement to pay the $34,000 liability owed by CCC to petitioner.

On October 29, 1986, CMB made the following journal entry recording its assumption of the liability of CCC:

| 10–29–86 | Account payable Champaign computer | - - - | - - - |
|---|---|---|---|
| | | $31,000 | - - - |
| | Account payable Champaign computer | - - - | - - - |
| | | 3,000 | - - - |
| | Note payable F. Howard Hitchins | - - - | $34,000 |

(Transfer Hitchins note from Champaign Computer Co. to ChemMultiBase in payment of services performed by Champaign Computer Co.)

CCC was not relieved of its liability to petitioner, nor was any note executed between petitioner and CMB with respect to the $34,000 loan.

In their returns for the years at issue, petitioners deducted their share of CMB's losses. In applying the basis limitation under section 1366(d), they included in their basis in CMB stock the $34,000 as "Loan from Hitchins to CCC transferred to CMB". Respondent disallowed the inclusion of this amount.

Section 1366(a) requires a taxpayer to take into account the pro rata share of income, losses, and deductions of an S corporation of which the taxpayer is a shareholder. The losses and deductions taken into account are limited as follows:

SEC. 1366(d). SPECIAL RULES FOR LOSSES AND DEDUCTIONS.—

(1) CANNOT EXCEED SHAREHOLDER'S BASIS IN STOCK AND DEBT.—The aggregate amount of losses and deductions taken into account by a shareholder under subsection (a) for any taxable year shall not exceed the sum of—

(A) the adjusted basis of the shareholder's stock in the S corporation * * *, and

(B) the shareholder's adjusted basis of any indebtedness of the S corporation to the shareholder * * *

The share of any S corporation loss in excess of the taxpayer's adjusted basis, under section 1366(d)(1)(A) and (B), is carried over indefinitely to the succeeding year. Sec. 1366(d)(2).

The decided cases have established certain principles in respect of the application of the indebtedness limitation under section 1366(d)(1)(B). See Eustice & Kuntz, Federal Income Taxation of S Corporations, sec. 9.05, at 9–47 through 9–54 (3d ed. 1993); Note, 30 Tax Law. 790 (1977).[3]

First and foremost is the requirement that there be an actual economic outlay by the taxpayer. See, e.g., *Underwood v. Commissioner,* 535 F.2d 309 (5th Cir. 1976), affg. 63 T.C. 468 (1975) (rearrangement by way of exchange of notes in respect of loan of funds by a C corporation to an S corporation is insufficient);[4] *Estate of Leavitt v. Commissioner,* 90 T.C. 206 (1988), affd. 875 F.2d 420 (4th Cir. 1989) (the existence of a contingent liability of shareholder as a guarantor also insufficient); *Perry v. Commissioner,* 54 T.C. 1293, 1296 (1970), affd. 71–2 USTC par. 9502, 27 AFTR 2d 71–1464 (8th Cir. 1971) (exchange of notes between shareholder and the S corporation likewise insufficient). The second principle is that the indebtedness of the S corporation must run directly to the shareholders: an indebtedness to an entity with passthrough characteristics which advanced the funds and is closely related to the taxpayer does not satisfy the statutory requirements. *Frankel v. Commissioner,* 61 T.C. 343 (1973), affd. without published opinion 506 F.2d 1051 (3d Cir. 1974) (partnership); *Prashker v. Commissioner,* 59 T.C. 172 (1972) (estate); *Burnstein v. Commissioner,* T.C. Memo. 1984–74 (S corporation);[5] *Robertson v. United States,* 32 AFTR 2d 73–5556, 73–2 USTC par. 9645 (D. Nev. 1973) (trust).

---

[3] Many of the cases involve tax years beginning prior to Dec. 31, 1982. For tax years beginning before that date, the relevant Code section relating to the limitation on deductions to adjusted basis of indebtedness was sec. 1374(c)(2). Sec. 1374(c)(2) was repealed as a result of the amendment of subch. S of ch. 1 of the Code by sec. 2 of the Subchapter S Revision Act of 1982, Pub. L. 97–354, 96 Stat. 1669, 1677–1683. The provisions of sec. 1374(c)(2) were included in the Internal Revenue Code at sec. 1366(d)(1) with no changes relevant to this analysis.

[4] See also *Wilson v. Commissioner,* T.C. Memo. 1991–544; *Griffith v. Commissioner,* T.C. Memo. 1988–445; *Shebester v. Commissioner,* T.C. Memo. 1987–246.

[5] See also *Wilson v. Commissioner,* T.C. Memo. 1991–544; *Shebester v. Commissioner,* T.C. Memo. 1987–246.

There is no question that there was an economic outlay by petitioner. Nor is there any question that, by virtue of the assumption, CMB became obligated to pay to petitioner the amount owed him on the note from CCC representing his loan to it. See 2 Restatement, Contracts 2d, sec. 310, comment c (1981).

Initially, petitioners argue that CCC should be compared to a supplier or contractor that incurred the debt on behalf of CMB and that petitioner's outlay was for the benefit of CMB. Petitioners argue that although CMB was not even in existence at the time of the series of payments that comprised the loan, CCC's undertaking was part of the overall plan between petitioner and the Millers. In effect, petitioners are arguing that CCC should be considered as an agent of CMB with the result that CMB was indebted to petitioner from the outset. While we recognize that an agency relationship may be found to exist, see *Burnstein v. Commissioner, supra,*[6] we are not persuaded, on the basis of the record before us, that such was the case herein. In this connection, we note that none of the $34,000 was treated as a loan from petitioner to CMB by petitioner, CCC, or CMB. See *supra* pp. 713–714. We also note that the initial transaction between CCC and CMB was reflected in a single note for $65,645.39 from the latter to the former and that the assumption of the $34,000 debt of CCC to petitioner did not take place until later. The record contains no explanation of the reason for the two steps.

Our rejection of petitioners' agency argument does not, however, resolve the issue before us. We are still left with the question whether CMB's assumption of CCC's obligation to petitioner created "any indebtedness of the S corporation to the shareholder" within the meaning of section 1366(d)(1)(B).

Petitioners argue that, because section 1366(d)(1)(B) refers to *"any* indebtedness" (emphasis added), without qualifying language, the debt assumed by CMB should be considered an indebtedness to petitioners.

Respondent counters that, because of the words *"of"* and *"to"* in section 1366(d)(1)(B) (emphasis added), the indebtedness must represent an outlay from the taxpayer directly to

---

[6] Cf. *Reese v. Commissioner,* T.C. Memo. 1976–275 (interest deduction issue), affd. on another issue 615 F.2d 226 (5th Cir. 1980).

the S corporation incurring the loss and that CMB's assumption of CCC's liability does not constitute such an outlay.

The issue before us has not been specifically addressed by any of the decided cases. In arriving at our decision, we have taken into account two general principles: (1) The word "indebtedness" can have different meanings in different provisions of the Internal Revenue Code, *Wheat v. United States*, 353 F. Supp. 720, 723 n.2 (S.D. Tex. 1973); and (2) the courts have strictly construed the term "indebtedness" in the context of determining the extent to which a taxpayer can deduct S corporation losses. See Note, 30 Tax Law., *supra* at 792. We also have taken into account the focus of the Congress at the time the predecessor of section 1366(d) was enacted, as reflected in the following explanation of the Senate Finance Committee:

> The amount of the net operating loss apportioned to any shareholder pursuant to the above rule is limited under section 1374(c)(2) to the adjusted basis of the shareholder's *investment* in the corporation; that is, to the adjusted basis of the stock in the corporation owned by the shareholder and the adjusted basis of any indebtedness of the corporation to the shareholder. * * * [S. Rept. 1983, 85th Cong., 2d Sess. (1958), 1958–3 C.B. 922, 1141;[7] emphasis added.]

In the absence of any evidence of a direct obligation from CMB to him, petitioner was simply a creditor beneficiary of CMB whose rights against it were derivative through CCC, albeit that he could probably sue CMB without joining CCC. See 2 Williston, Contracts 3d, sec. 864, at 871–872 (1959). We think it significant that, as between CCC and CMB, CCC remained liable as a surety of the obligation of CMB to petitioner; there was no novation relieving CCC of its liability to petitioner as a primary obligor. 2 Restatement, Contracts 2d, secs. 280 comment d, 310 comment c (1981). Thus, if CMB failed to pay its obligation, petitioner would have had recourse against CCC. *Id.* sec. 304; 2 Williston, *supra* sec. 356, at 864–865. The continued obligation of CCC to petitioner would, if CMB defaulted, provide a remedy to petitioner which would in effect produce a reimbursement of his initial outlay by way of his loan to CCC. 2 Restatement, *supra* secs. 304 comment c, 310(2). Thus, petitioner's position ultimately

---

[7] See also *Wheat v. United States*, 353 F. Supp. 720, 722 (S.D. Tex. 1973) ("the concept of indebtedness of the corporation to the shareholders as employed in the statute was intended to be comparable to actual capital investment by the shareholders").

depended upon his status as a creditor and shareholder of CCC, and not as an investor in CMB. Cf. *Frankel v. Commissioner*, 61 T.C. at 348–349. We are satisfied that, under these circumstances, there was no "investment" by petitioner in CMB within the ambit of that word as used by the Senate Finance Committee.

The continued existence of petitioner's rights against CCC distinguishes *Gilday v. Commissioner*, T.C. Memo. 1982–242, and Rev. Rul. 75–144, 1975–1 C.B. 277, upon which petitioners rely. In *Gilday*, a bank held the note of an S corporation. The taxpayer and other shareholders of the S corporation issued their note to the bank, and the bank canceled the note of the S corporation. In exchange, the S corporation then gave its note, in the same amount, to the shareholders. The result was that the shareholders became the sole obligors to the bank, and the S corporation was directly indebted to the shareholders. We held the shareholders had a basis in the debt for purposes of section 1374(c), the predecessor of section 1366(d). The same situation existed in Rev. Rul. 75–144, *supra*. We recognize that in neither instance did the shareholder of the S corporation make an actual outlay of funds, but it is clear that the basis of *Gilday* and Rev. Rul. 75–144 is that the substitution of the shareholders as the sole unconditional obligors to the bank and of the S corporation as the sole unconditional debtor to the shareholders constituted a constructive furnishing by the shareholder of the funds previously loaned by the third party bank.[8]

We are not unaware of the fact that petitioner might well have succeeded had he adopted another form of the transaction in question, e.g., by way of a novation releasing CCC from liability and obtaining a replacement note from CMB. Alternatively, petitioner could have lent $34,000 to CMB, and then CMB could have paid its debt to CCC, and CCC could have paid its debt to petitioner. The result would have been that CMB would be directly and solely indebted to petitioner in the amount of $34,000. Under *Gilday* and other precedent, the form of such a transaction would have been upheld, and peti-

---

[8] In this connection, we also think it significant that we are not dealing herein with a rearrangement of financial transactions involving an independent third party, but with a transaction involving closely related parties. Cf. *Underwood v. Commissioner*, 535 F.2d 309, 312 n.2 (5th Cir. 1976), affg. 63 T.C. 468 (1975).

tioner would have had a basis in CMB's indebtedness.[9] But, in the area of indebtedness for the purpose of applying section 1366(d), form coupled with adequate substance or reality is not to be disregarded. See *Uri v. Commissioner*, 949 F.2d 371, 373–374 (10th Cir. 1991), affg. T.C. Memo. 1989–58; *Harris v. United States*, 902 F.2d 439, 443 (5th Cir. 1990). "'[A] transaction is to be given its tax effect in accord with what actually occurred and not in accord with what might have occurred.'" *Don E. Williams Co. v. Commissioner*, 429 U.S. 569, 579 (1977) (quoting *Commissioner v. National Alfalfa Dehydrating & Milling Co.*, 417 U.S. 134, 148–149 (1974)).

In sum, we hold that the $34,000 loan from petitioner to CCC cannot be included, under section 1366(d)(1)(B), in his basis in determining the amount of CMB's losses which petitioners can deduct.

With respect to the additions to tax for negligence, the test is whether there was a lack of due care or a failure to act prudently on the part of petitioners, who have the burden of proof. Rule 142(a); *Chase v. Commissioner*, 926 F.2d 737, 740 (8th Cir. 1991), affg. T.C. Memo. 1990–164; *Neely v. Commissioner*, 85 T.C. 934, 947 (1985); *Bixby v. Commissioner*, 58 T.C. 757, 791–792 (1972). The fact that the case was submitted fully stipulated does not lessen their burden. *Borchers v. Commissioner*, 95 T.C. 82, 90–91 (1990), affd. on other issues 943 F.2d 22 (8th Cir. 1991). Petitioners have furnished no evidence to carry their burden with respect to any of the items in the notice of deficiency to the extent that they have conceded such items in the stipulation of settled issues. Consequently, we sustain respondent's determinations in respect of the additions to tax applicable to those items. We sustain petitioners, however, with respect to the addition to tax under section 6653(a)(1)(B) attributable to the inclusion of the $34,000 loan in petitioner's basis. The mere fact that we have held against petitioners in respect of such inclusion does not, in and of itself, require a holding for respondent on the addition to tax. *Antonides v. Commissioner,* 91 T.C. 686, 700 (1988), affd. 893 F.2d 656 (4th Cir. 1990). Indeed, we have specifically refused to impose additions to tax for negligence, etc., where it appeared that the issue was one not

---

[9] See *Burnstein v. Commissioner*, T.C. Memo. 1984–74.

previously considered by the Court and the statutory language was not entirely clear. *Braddock v. Commissioner,* 95 T.C. 639, 645 (1990); *Wofford v. Commissioner,* 5 T.C. 1152, 1166–1167 (1945). We think the issue in respect of the inclusion in basis of the $34,000 loan falls within the ambit of the foregoing cases. Accordingly, we hold that the addition to tax under section 6653(a)(1)(B) should not be imposed to the extent that it is attributable to the $34,000 loan.

*Decision will be entered under Rule 155.*