T.C. Summary Opinion 2005-44

UNITED STATES TAX COURT

CRYSTAL K. ABEYTA AND RON L. ABEYTA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19868-03S.                  Filed April 18, 2005.

Crystal K. Abeyta and Ron L. Abeyta, pro sese.

<u>Randall L. Preheim</u>, for respondent.


ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time that the petition was filed.[1]  The decision to

---

[1]  Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for 2000,
the taxable year in issue, and all Rule references are to the Tax
Court Rules of Practice and Procedure.  All monetary amounts are
rounded to the nearest dollar.

be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 2000 of $6,826 and an accuracy-related penalty under section 6662(a) of $1,365.

After petitioners' concession,[2] the issues for decision are:

(1)  Whether petitioners are entitled under section 119 to exclude from gross income the value of lodging furnished to petitioner Ron L. Abeyta (Mr. Abeyta).  We hold that they are not.

(2)  Whether petitioners are liable for self-employment tax on the value of lodging furnished to Mr. Abeyta.  We hold that they are not.

(3)  Whether petitioners are liable under section 6662(a) for an accuracy-related penalty.  We hold that they are not.

An adjustment to the amount of petitioners' itemized deductions is purely a computational matter, the resolution of which is dependent on our disposition of the disputed issues.

## Background

Some of the facts have been stipulated, and they are so found.  We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

---

[2]  Petitioners concede that they are not entitled to claim a cost-of-living allowance exclusion under sec. 912.

At the time that the petition was filed, petitioners resided in Colorado Springs, Colorado.

In October 1997, Mr. Abeyta began working as a software engineer for TRW Systems Overseas Inc. (TRW), a company based in Redondo Beach, California. At all relevant times, TRW was an institutional contractor with Department of Defense agencies, where TRW assigned its personnel to work at these agencies on specific projects.

In early March 1998, Mr. Abeyta accepted a position with TRW to work at the Joint Defense Space Research Facility/Joint Defense Space Communications Station (JDSRF/JDSCS) located at the United States-Australian Joint Defence Facility at Pine Gap Air Force Base in Australia (base). On March 28, 1998, petitioners and their three children relocated to Australia where they lived for approximately 4-1/2 years.

As a condition of Mr. Abeyta's employment, petitioners were required to sign a closing agreement wherein they agreed to waive their right to elect a foreign income exclusion under section 911(a). The closing agreement stated, in part, as follows:

> WHEREAS, said taxpayer has not made any election under Code section 911(a) with respect to income derived from services performed by said taxpayer for the employer at the JDSRF/JDSCS in Australia for the taxable year(s) ending 31 December 1998, 31 December 1999, 31 December 2000, hereinafter referred to as the taxable period(s); and
>
> WHEREAS, prior to the execution of this closing agreement, the said taxpayer voluntarily agrees to

waive his or her right to any election under Code section 911(a) for the income specified herein for the taxable period(s) * * *

         *     *     *     *     *     *     *

        NOW IT IS HEREBY DETERMINED AND AGREED for Federal income tax purposes that:

        (a)(1) the said taxpayer shall not at any time during or after his or her presence in Australia make any election under Code section 911(a) with respect to income paid or provided to said taxpayer as consideration for services performed for the employer at the JDSRF/JDSCS in Australia; and

        (2) the said taxpayer irrevocably waives and foregoes any right that he or she may have to make any election under Code section 911(a) with respect to income paid or provided to said taxpayer as consideration for services performed for the employer at the JDSRF/JDSCS in Australia; * * *

         *     *     *     *     *     *     *

        (2) the said taxpayer agrees to attach a copy of this closing agreement to his or her United States Income Tax Return.

As another condition of his employment, TRW required Mr. Abeyta to accept assigned housing as was required by the Department of the Air Force for personnel working at the base. The only housing available was in Alice Springs, Australia. Alice Springs is located in the middle of the Northern Territory of Australia and is surrounded by three deserts. At that time, the town had a population of approximately 24,000 people. Aside from a prison located 15 miles from the base, Alice Springs, which is approximately 22 miles from the base, is the closest residential area. Similar to other towns near a military

installation, the residents of Alice Springs include personnel who work at the base as well as people who are unaffiliated with the base.

The assigned housing units were located in six different sections throughout the town and consisted of condominiums (generally for people with no family members) and single family homes (generally for people with family members), which were not available for private ownership. These housing units were furnished only to personnel working at the base. The housing sections were not in a separately gated community, and were located adjacent to homes that were available to the general public. With respect to these housing units, Boeing Corp. provided the maintenance,[3] local Alice Springs companies provided other services such as trash collection, sewage, and utilities, and the local Alice Springs police provided law enforcement services.

For the taxable year 2000, petitioners resided in a single family, ranch-style home approximately 25 feet wide by 35 feet long with a metal fence surrounding the property; it had a yard and a 6-foot-high carport. Petitioners' home was located on a public street that ran through the neighborhood. Their home was located in a suburban residential community with between 16 and

---

[3] Boeing Corp. was also the maintenance contractor for the base.

20 houses. All of petitioners' neighbors worked at the base. The closest gas station was 1 mile away, and the closest grocery store was farther away in town.

Petitioners did not pay any rent or utility expenses with respect to the lodging.[4] Generally, Mr. Abeyta would commute by public bus from Alice Springs to the base. On occasion, he would commute by his own privately owned automobile to the base or to offsite locations for meetings.

For the taxable year 2000, the Department of the Air Force issued to Mr. Abeyta a Form 1099-MISC, Miscellaneous Income, reporting $7,506 as the value of lodging furnished to Mr. Abeyta.

Petitioners timely filed a 2000 Federal income tax return, which their certified public accountant of 19 years prepared.[5] In preparing this return, petitioners submitted the raw data to their accountant; petitioners met with their accountant to "go through the details and figure out what we're going to put down on our taxes"; and petitioners paid their accountant to research and advise them concerning excluding the value of lodging

---

[4] We note that utilities furnished by the employer to make a lodging habitable constitute lodging for purposes of sec. 119. Turner v. Commissioner, 68 T.C. 48, 50 (1977); accord Rev. Rul. 68-579, 1968-2 C.B. 61. Respondent, however, did not raise the issue whether the value of utilities furnished to Mr. Abeyta should be included in petitioners' gross income. Therefore, we need not address the matter.

[5] In 1998, petitioners provided their accountant with a copy of the closing agreement.

furnished to Mr. Abeyta and the section 912 exclusion.  Attached

to their 2000 return was a Form 2555, Foreign Earned Income,

reporting as follows:

Cost of living and overseas differential    [1]$23,213
Less amount excludable under sec. 119        7,506
Foreign earned income[2]                     15,707

[1]  It is unclear how petitioners computed this figure.
[2]  Petitioners purportedly claimed an exclusion for cost-of-living
allowances under sec. 912.

Respondent determined that petitioners were not entitled to

claim these exclusions and that petitioners are liable for self-

employment tax on the value of lodging.  Respondent further

determined that petitioners are liable for the accuracy-related

penalty under section 6662(a) for an underpayment of tax.

Petitioners timely filed with the Court a petition

disputing the determined deficiency as well as the accuracy-

related penalty.

## Discussion

Generally, the Commissioner's determinations are presumed

correct, and the taxpayer bears the burden of proving that those

determinations are erroneous.  Rule 142(a); Welch v. Helvering,

290 U.S. 111, 115 (1933).  The burden of proof may shift to the

Commissioner under section 7491(a) in certain circumstances.

With respect to the substantive issues, section 7491(a) is not

applicable because we decide these issues without regard to the

burden of proof.  With respect to a taxpayer's liability for any

penalty, section 7491(c) places on the Commissioner the burden of production.

## A. Section 119 Exclusion

Unless otherwise specifically excluded, gross income includes all income from whatever source derived, including compensation for services. Sec. 61(a)(1). Compensation for services includes income realized in any form including money, property, or services. Sec. 1.61-2(d)(3), Income Tax Regs. Section 119(a), however, excludes from gross income the value of lodging furnished to an employee, his spouse, and his dependents by his employer only if three conditions are met: (1) The employee is required to accept such lodging as a condition of employment; (2) the lodging is furnished for the convenience of the employer; and (3) the lodging is on the business premises of the employer. See sec. 1.119-1(b), Income Tax Regs. The value of the lodging will be included in gross income if the employee fails to meet any of these three conditions. Dole v. Commissioner, 43 T.C. 697 (1965), affd. per curiam 351 F.2d 308 (1st Cir. 1965).

The parties do not dispute that petitioners meet the first two tests under section 119(a). At issue is whether the lodging was on the business premises of the employer.

Section 1.119-1(c)(1), Income Tax Regs., defines business premises of the employer as the place of employment of the

employer.  The Court has construed the phrase "on the business premises" to mean either:  (1) Living quarters that constitute an integral part of the business property, or (2) premises on which the company carries on some of its business activities.  See <u>Dole v. Commissioner</u>, <u>supra</u> at 707 (holding that employees living in company-owned housing 1 mile away from where they worked did not constitute living on the business premises of their employer).

In addition, section 119(c) provides that:

> an individual who is furnished lodging in a camp located in a foreign country by or on behalf of his employer, such camp shall be considered to be part of the business premises of the employer.

Section 119(c)(2) further provides that a camp constitutes lodging which is:

> (A) provided by or on behalf of the employer for the convenience of the employer because the place at which such individual renders services is in a remote area where satisfactory housing is not available on the open market,

> (B) located, as near as practicable, in the vicinity of the place at which such individual renders services, and

> (C) furnished in a common area (or enclave) which is not available to the public and which normally accommodates 10 or more employees.

Petitioners contend that their lodging was on the business premises of Mr. Abeyta's employer because their lodging constituted a "camp" within the meaning of section 119(c). Petitioners argue that their residence was in a remote location completely for the benefit and convenience of the employer and

that there were no adequate facilities at the base.  Respondent, on the contrary, contends that the lodging does not satisfy the three requirements under section 119(c)(2) to constitute a camp. For the reasons stated below, we agree with respondent to the extent that the requirements of section 119(c)(2)(C) have not been satisfied.

On the basis of the record in its entirety, the lodging satisfies only the first two requirements under section 119(c)(2).  With respect to section 119(c)(2)(A), we conclude that the lodging was provided on behalf of TRW.  Respondent argues that because the Form 1099-MISC indicated that the Department of the Air Force provided the housing, the lodging was not provided by the employer.  We disagree.  Section 119(c)(2)(A) specifically provides that a camp constitutes lodging that is "provided by or on behalf of the employer for the convenience of the employer".  Although it appears that the Department of the Air Force owned the housing units, such housing was provided only to employees working at the base, which presumably includes Australian military personnel, U.S. military personnel, and employees of the institutional contractors working at the base.

With respect to section 119(c)(2)(B), we conclude that the lodging was located, as near as practicable, to the base.  Aside

from the prison, Alice Springs was the closest residential community to the base.

With respect to section 119(c)(2)(C), however, we conclude that the lodging was not furnished in a common area (or enclave) which is not available to the public and which normally accommodates 10 or more employees. Indeed, petitioners' lodging was not available to the public as evidenced by the fact that their specific lodging was restricted to personnel who work at the base. The lodging, however, was furnished in a common area with respect to the fact that the base lodging was located within the same community as housing available to the general public. The housing units were interspersed throughout Alice Springs and not separated into gated communities. Section 1.119-1(d)(5), Income Tax Regs., provides that a cluster of housing units does not satisfy section 119(c)(2)(C) if it is adjacent to or surrounded by substantially similar housing available to the general public. Indeed, a public road accessible to the general public ran through petitioners' neighborhood. Moreover, we are constrained to find that living in a residential suburb does not fit the common parlance of a "camp". These factors are sufficient to convince us that the lodging was not a camp for purposes of section 119(c). Therefore, petitioners' lodging does not constitute a camp within the meaning of section 119(c)(2)(C). Accordingly, we sustain respondent's determination on this issue.

B.  Self-Employment Tax

Section 1401 imposes a tax on self-employment income, defined generally as "the net earnings from self-employment derived by an individual" for old-age, survivors, and disability insurance.  Sec. 1402(b).  The net earnings are defined generally as "the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business".  Sec. 1402(a).

Respondent contends that petitioners are liable for self-employment taxes for the income reported on Form 1099-MISC, which represented the value of lodging provided by the Department of the Air Force.  Respondent argues that the income constitutes nonemployee compensation to Mr. Abeyta because he was not an employee of the Department of the Air Force.  Respondent reasons that had TRW paid for the lodging, the amount would have been characterized as wages, which would have been subject to Federal Insurance Contributions Act (FICA) and Medicare taxes, but because it was paid by the Department of the Air Force, it constitutes nonemployee compensation income reportable on Schedule C, Profit or Loss From Business, which would be subject to the self-employment tax.  We disagree.

The record is clear, and respondent does not dispute, that Mr. Abeyta was an employee of TRW during the taxable year 2000.[6] As stated earlier, all personnel working at the base were required to accept lodging in Alice Springs, and that evidently included employees of contractors working at the base. Although it is not entirely clear from the record the manner in which TRW accounted to the Department of the Air Force for housing provided to TRW employees, it is plausible to infer that TRW arranged for petitioners' lodging as part of TRW's status as a contractor at the base.[7] As a condition of his employment to work at the JDSRF/JDSCS, Mr. Abeyta was required to accept the lodging provided by TRW in Alice Springs. The nature of TRW's status as a contractor at the base as well as the conditions prerequisite to Mr. Abeyta's employment at the base do not rise to the level

---

[6] The essence of respondent's argument is that the value of the lodging escaped the FICA and Medicare taxes. Respondent's argument appears premised on a finding that Mr. Abeyta was somehow an independent contractor such that the lodging would be subject to the self-employment tax. See Jackson v. Commissioner, 108 T.C. 130, 133-134 (1997) (earnings derived from work as an independent contractor are self-employment income subject to the self-employment tax). The evidence, however, is to the contrary. See secs. 3101, 3121(d)(2); see also Profl. & Executive Leasing, Inc. v. Commissioner, 89 T.C. 225, 232 (1987) (listing seven factors considered in determining whether an individual is an employee or an independent contractor), affd. 862 F.2d 751 (9th Cir. 1988).

[7] With respect to the lodging, the statutory notice of deficiency states that Mr. Abeyta "is an employee of a defense contractor in Alice Springs, Australia, and is furnished housing by the US Air Force as part of the contract that the US Government has with the contractor."

that Mr. Abeyta was self-employed by the Department of the Air Force for purposes of the self-employment tax. Therefore, we conclude that petitioners are not liable for the self-employment tax on the value of lodging provided to Mr. Abeyta. Accordingly, we hold for petitioners on this issue.

C. Accuracy-Related Penalty

The last issue for decision is whether petitioners are liable for an accuracy-related penalty pursuant to section 6662(a) for the year in issue.

Section 6662(a) imposes a penalty equal to 20 percent of any underpayment of tax that is attributable to either (1) negligence or disregard of rules or regulations or (2) a substantial understatement of income tax. See sec. 6662(a), (b)(1) and (2).

The term "negligence" includes any failure to make a reasonable attempt to comply with the Internal Revenue Code. Sec. 6662(c). "Negligence" also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. The term "disregard" includes any careless, reckless, or intentional disregard. Id.; sec. 1.6662-3(b)(2), Income Tax Regs.

An understatement of income tax is "substantial" if it exceeds the greater of 10 percent of the tax required to be shown on the return, or $5,000. Sec. 6662(d)(1)(A). As relevant herein, an "understatement" is defined as the excess of the tax

required to be shown on the return over the tax actually shown on the return.  Sec. 6662(d)(2)(A).

Whether the accuracy-related penalty is applied because of negligence or disregard of rules or regulations or a substantial understatement of tax, the accuracy-related penalty does not apply to any portion of the underpayment if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion. Sec. 6664(c)(1); sec. 1.6664-4(b), Income Tax Regs.; see United States v. Boyle, 469 U.S. 241, 242 (1985).  The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Relevant factors include the taxpayer's effort to assess the taxpayer's proper tax liability for such year, including the taxpayer's reasonable and good faith reliance on the advice of a professional such as an accountant.  Id.  To show good faith reliance on the accountant who prepared the taxpayer's return, the taxpayer must demonstrate that (1) he or she provided the correct information to the accountant, and (2) the item incorrectly claimed, omitted, or reported in the return was a result of the accountant's error.  Westbrook v. Commissioner, 68 F.3d 868, 881 (5th Cir. 1995), affg. T.C. Memo. 1993-634; Weiss v. Commissioner, 94 T.C. 473, 487 (1990).

Section 7491(c) places on the Commissioner the burden of production with respect to a taxpayer's liability for any penalty. "The Commissioner's burden of production under section 7491(c) is to produce evidence that it is appropriate to impose the relevant penalty". Swain v. Commissioner, 118 T.C. 358, 363 (2002); see also Higbee v. Commissioner, 116 T.C. 438, 446 (2001). The Commissioner, however, does not have the burden to introduce evidence regarding reasonable cause or substantial authority. Higbee v. Commissioner, supra at 446-447. The taxpayer, however, still has the burden of proving that the Commissioner's determination of the accuracy-related penalty is erroneous. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933); Higbee v. Commissioner, supra at 446-448.

Respondent satisfied his burden of production under section 7491(a)(1) because the record shows that petitioners substantially understated their income tax for 2000. See sec. 6662(d)(1)(A)(ii); Higbee v. Commissioner, supra at 442. Accordingly, petitioners bear the burden of proving that the accuracy-related penalty should not be imposed with respect to any portion of the understatement for which they acted with reasonable cause and in good faith. See sec. 6664(c)(1); Higbee v. Commissioner, supra at 446. The mere fact that we held against petitioners with respect to the section 119 exclusion

does not, in and of itself, require holding for respondent on the accuracy-related penalty. See Hitchins v. Commissioner, 103 T.C. 711, 719 (1994).

Respondent contends that petitioners were negligent on the following grounds: (1) Petitioners were not entitled to claim the foreign earned income exclusion under the signed closing agreement; (2) in the alternative, petitioners were not entitled to claim the section 912 exclusion because the Form 2555 made no reference to that section;[8] and (3) petitioners were not entitled to exclude from gross income the value of lodging under section 119.

Petitioners do not dispute that they signed the closing agreement and that they agreed not to claim an exclusion under section 911. Petitioners contend that they did not claim an exclusion under section 911, but that they claimed an exclusion under section 912, which was not prohibited in the closing agreement. Moreover, petitioners contend that they claimed exclusions under sections 119 and 912 only after their accountant researched these issues.

Having observed petitioners' appearance and demeanor at trial, we found them to be honest, sincere, and credible witnesses.

---

    [8] Sec. 912 provides that civilian officers and employees of the U.S. Government stationed outside the continental U.S. may exclude from gross income the cost-of-living allowances received.

Petitioners' accountant had been preparing their returns for approximately 19 years including preparing the return at issue. When petitioners signed the closing agreement in 1998, they provided a copy to their accountant. A review of petitioners' 2000 return reveals that petitioners submitted to their accountant all the information necessary for their accountant to provide tax advice and prepare the return. In particular, petitioners sought advice from their accountant whether they were entitled to any exclusions. Unsure as to their entitlement, petitioners paid their accountant to research these specific issues. After such research, petitioners' accountant concluded that they were so entitled and prepared the returns excluding income under sections 119 and 912 from petitioners' gross income. Therefore, we find that petitioners reasonably and in good faith relied on the advice of their accountant. Accordingly, we hold that petitioners were not negligent in relying on their accountant and thus are not liable for the accuracy-related penalty under section 6662(a).

## Conclusion

We have considered all of the other arguments made by the parties, and, to the extent that we have not specifically addressed them, we conclude that they are without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect our disposition of the disputed issues, as well as petitioners' concession,

<u>Decision will be entered</u>

<u>under Rule 155.</u>