T.C. Summary Opinion 2011-58


UNITED STATES TAX COURT


RICHARD J. AND JACQUELINE ROCCHIO, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7719-10S.               Filed May 11, 2011.


Richard J. Rocchio, pro se.

<u>William R. Brown, Jr.</u>, for respondent.


ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any

---

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency in petitioners' 2007 Federal income tax of $7,033 and an accuracy-related penalty under section 6662(a) of $1,407.

The issues for decision are:

(1) Whether petitioner-husband was a shareholder in an S corporation during 2007 such that petitioner-husband is required to report his pro rata share of the corporation's income. We hold that he was; and

(2) whether petitioners are liable for the accuracy-related penalty under section 6662(a). We hold that they are not.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts, supplemental stipulation of facts, and accompanying exhibits. All references to petitioner in the singular are to petitioner Richard J. Rocchio.

Petitioners resided in the State of Florida when the petition was filed.

Petitioner's mother and father each owned 50-percent interests in Leas-Co Leasing, Inc. (Leas-Co), a New York corporation. After the death of petitioner's mother in 1993, petitioner and each of his three siblings inherited 12.5-percent

interests in Leas-Co.  At all times, petitioner's father owned the remaining 50-percent interest in Leas-Co.  In the years following petitioner's mother's death, petitioner's father ran Leas-Co, petitioner was on the board of directors, and petitioner's siblings were all officers.

Sometime around 2000 petitioner's father remarried. Petitioner's father's new wife created family strife, and as a result petitioner's father became estranged from each of his children.  Petitioner's father and his new wife began "living their life in luxury", and petitioner and his siblings received "little to nothing" from the company.

On October 21, 2006, petitioner and his three siblings filed for judicial dissolution of Leas-Co pursuant to N.Y. Bus. Corp. Law section 1104-a (McKinney 2003).  On January 9, 2007, petitioner's father elected to purchase the shares held by petitioner and his siblings pursuant to N.Y. Bus. Corp. Law section 1118 (McKinney 2003).

Petitioner and his siblings could not agree with their father regarding the fair value of the corporation; thus, litigation ensued that eventually resulted in a settlement. Petitioner sold his shares in Leas-Co to his father on August 12, 2009.

Leas-Co's 2007 Form 1120S, U.S. Income Tax Return for an S Corporation, reported $316,635 of ordinary business income.  A

2007 Schedule K-1, Shareholder's Share of Income, Deductions, Credits, etc., reported petitioner's share of the ordinary business income as $39,579, consistent with petitioner's 12.5-percent interest in Leas-Co.

Petitioners did not include the $39,579 from the Schedule K-1 on their 2007 Federal income tax return.

In the notice of deficiency respondent determined that petitioners must include the $39,579 reported on the Schedule K-1 in gross income and that petitioners are liable for the accuracy-related penalty under section 6662(a) for a substantial understatement of income tax.

## Discussion

A. <u>Burden of Proof</u>

Generally, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

Under section 7491(a)(1), the burden of proof may shift from the taxpayer to the Commissioner if the taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's liability. Petitioners have not alleged that section 7491 applies, nor did they introduce a sufficiency of evidence to invoke that section; therefore, the burden of proof remains on petitioners.

B.  S Corporation Pro Rata Distributive Share

Generally, a shareholder of an S corporation must include in gross income his or her pro rata share of the corporation's income, loss, deduction, or credit.  Sec. 1366(a), (c); see also sec. 61(a).  Consequently, we must decide whether petitioner was a shareholder of Leas-Co during 2007 such that he is required to report his pro rata share of Leas-Co's ordinary income.

In the application of Federal tax law, State law controls in determining the nature of the taxpayer's legal interest in property.  United States v. Natl. Bank of Commerce, 472 U.S. 713, 722 (1985); Aquilino v. United States, 363 U.S. 509, 513 (1960).  As a result we must look to New York State law to determine petitioner's interest in Leas-Co during 2007.

On October 21, 2006, petitioner and his siblings filed for judicial dissolution of Leas-Co pursuant to N.Y. Bus. Corp. Law section 1104-a.  That statute permits holders of shares representing 20 percent or more of the votes of all outstanding shares of an S corporation to file a petition for dissolution if those in control of the corporation (1) have been guilty of illegal, fraudulent, or oppressive actions toward the complaining shareholders, or (2) are wasting the corporation's assets.  Id.

On January 9, 2007, petitioner's father, as the remaining shareholder, elected to purchase petitioner's and his siblings' outstanding shares pursuant to N.Y. Bus. Corp. Law section 1118.

That statute provides for an irrevocable election and requires valuation of the shares by the court if the shareholders cannot agree on the fair value of such shares; further, the statute provides that the valuation date is the date prior to the date on which the petition for dissolution was filed.  Id.

Petitioner contends that because he and his siblings filed for judicial dissolution and his father elected to purchase his shares, he was not liable for the Federal income tax on his pro rata share of Leas-Co's income in 2007.  In support of his position petitioner relies on a decision and order issued in In re Gillman (Audio Den, Ltd.), N.Y.L.J., Nov. 25, 1988, at 27 (Sup. Ct. 1988), which states in part:

> To permit the selling shareholder to participate in post-election management would serve no purpose, for his interest is frozen statutorily as of the day preceding his application for the corporation's dissolution.  What happens in the business thereafter is of no moment vis a vis the value of his shares. Indeed the last clause of [N.Y. Bus. Corp. Law] Section 1118 specifically excludes from the valuation process "any element of value arising from * * * [the] filing [for dissolution]".

Petitioner contends that because his interest in Leas-Co was frozen statutorily and he was no longer entitled to participate in the management of Leas-Co, he is not liable for the Federal income tax on his pro rata share of Leas-Co's income for 2007. Petitioner further contends that he is not liable for the Federal income tax because he "never got the money for * * * [the Schedule] K-1" in 2007.

Respondent contends that petitioner remained a shareholder of Leas-Co until his shares were sold in August 2009; therefore, petitioner is liable for the Federal income tax on his pro rata share of Leas-Co's income for 2007.

Petitioner's reliance upon In re Gillman (Audio Den, Ltd.), supra, is misplaced. The court in that case acknowledged that section 1118 of N.Y. Bus. Corp. Law, and the remainder of Article 11 of N.Y. Bus. Corp. Law, do not provide guidance regarding the selling of a shareholder's rights to profits and dividends during "the hiatus which separates the filing of the dissolution petition and payment for his shares." Id.

In Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967), the Supreme Court addressed the means for determining State law in the context of a Federal tax case, stating:

> the State's highest court is the best authority on its own law. If there be no decision by that court then federal authorities must apply what they find to be the state law after giving "proper regard" to relevant rulings of other courts of the State. In this respect, it may be said to be, in effect, sitting as a state court. Bernhardt v. Polygraphic Co., 350 U.S. 198 (1956).

The parties have not cited any case from New York State's highest court deciding the narrow legal question presented herein, and we are not aware of any such case.[2] Under the

---

[2] In most states the State supreme court is the highest court; however, in New York the supreme court is a trial court. The New York Court of Appeals is the State's highest court.

circumstances, we must do our best "to discern what such State's highest court would decide." Estate of Young v. Commissioner, 110 T.C. 297, 302 (1998).

The New York Court of Appeals has held that even when a corporation has been "dissolved, the shareholder's interest does not abruptly end." Indep. Investor Protective League v. Time, Inc., 406 N.E.2d 486, 488 (N.Y. 1980). Further, the New York Supreme Court, Appellate Division, explained that a shareholder in a corporation remains such "until payment is made for the fair value of his shares". In re Davis, 571 N.Y.S.2d 234, 236 (App. Div. 1991).

In Stern v. Bambu Sales, Inc. (In re Spielfogel), 237 Bankr. 555, 559 (E.D.N.Y. 1999), the U.S. District Court for the Eastern District of New York examined the issue of whether a shareholder is entitled to a dividend after filing for dissolution (pursuant to N.Y. Bus. Corp. Law section 1104-a) and a subsequent election (pursuant to N.Y. Bus. Corp. Law section 1118) by the corporation but before the purchase was complete. As in the instant case, several years separated the filing for dissolution and the actual purchase of the shareholder's shares. Id. at 558. The court held that despite the filing for judicial dissolution and the election by the corporation to purchase the shares, the shareholder's interest "was not put to an 'abrupt[] end,' * * * by virtue of the election, * * * [and he remained] entitled to

the post-election dividend" before the sale of the shares was accomplished.  Id. at 560.

Because petitioner's interest in Leas-Co did not "abruptly end" upon the filing for judicial dissolution and subsequent election by petitioner's father to purchase shares, petitioner remained a shareholder in Leas-Co until the sale of his shares was complete in August 2009.  See id. at 559; Indep. Investor Protective League v. Time, Inc., supra at 488; In re Davis, supra at 236.

Petitioner maintains that even if he were a shareholder in 2007, he is not liable for the Federal income tax on the income of Leas-Co for 2007 because he "never got the money for * * * [the Schedule] K-1" in 2007.

Contrary to petitioner's contention, section 1.1366-1(a)(1), Income Tax Regs., provides that "An S corporation must report, and a shareholder is required to take into account in the shareholder's return, the shareholder's pro rata share, whether or not distributed, of the S corporation's items of income". (Emphasis added.)  Because petitioner was a shareholder in Leas-Co until August 2009 and regardless of whether the income from Leas-Co was distributed in 2007, petitioner must report his pro rata share of Leas-Co's income on his Federal income tax return. See sec. 1366(a), (c); sec. 1.1366-1(a)(1), Income Tax Regs.

Accordingly, we hold that petitioner is required to report his pro rata share of Leas-Co's 2007 income on his joint Federal income tax return for that year.

C.  Section 6662(a) Substantial Understatement of Tax

Respondent determined in the notice of deficiency that petitioners are liable for the accuracy-related penalty under section 6662(a) for a substantial understatement of income tax for 2007.

Section 6662(a) and (b)(2) imposes a penalty equal to 20 percent of any underpayment of tax that is due to a substantial understatement of income tax.  See sec. 6662(a), (b)(2).  An individual substantially understates his or her income tax when the reported tax is understated by the greater of 10 percent of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1)(A).

The accuracy-related penalty does not apply to any portion of an underpayment, however, if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion.  Sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs.  The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  The most important factor is the extent of the

taxpayer's effort to assess his proper tax liability for such year.  Id.  Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge, and education of the taxpayer.  Sec. 1.6664-4(b), Income Tax Regs.; see Higbee v. Commissioner, 116 T.C. 438, 449 (2001) (citing Remy v. Commissioner, T.C. Memo. 1997-72).  The determination of whether a taxpayer acted with reasonable cause and in good faith with respect to an underpayment that is related to an item reflected on the return of a passthrough entity is made on the basis of all pertinent facts and circumstances, including the taxpayer's own actions, as well as the actions of the passthrough entity.  Sec. 1.6664-4(e), Income Tax Regs.

Section 7491(c) places on the Commissioner the burden of production with respect to a taxpayer's liability for any penalty.  Respondent satisfied his burden of production because the record shows that petitioners substantially understated their income tax for 2007 by $7,033, which amount exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000.  See sec. 6662(d)(1)(A); Higbee v. Commissioner, supra at 446.  Accordingly, petitioners bear the burden of proving that the accuracy-related penalty should not be imposed with respect to any portion of the underpayment for which they acted with reasonable cause and in good faith.  See sec. 6664(c)(1); Higbee

v. Commissioner, supra at 446.  The mere fact that we held against petitioners with respect to petitioner's status as a shareholder of Leas-Co does not, in and of itself, require holding for respondent on the accuracy-related penalty.  See Hitchins v. Commissioner, 103 T.C. 711, 719 (1994).

In view of the complexities surrounding the taxation of S corporations and their shareholders, as well as the challenges of devining New York State law, we find that petitioner did have reasonable cause to believe that he was not a shareholder of Leas-Co in 2007 and did act in good faith with respect to the underpayment.

Accordingly, we hold that petitioners are not liable for the accuracy-related penalty under section 6662(a).

## Conclusion

We have considered all of the arguments made by the parties, and, to the extent that we have not specifically addressed them, we conclude that they do not support a result contrary to that reached herein.

Finally, we observe, without commenting on the validity of such, that petitioner may have a remedy pursuant to New York State law with respect to the undistributed earnings of Leas-Co reported on the Schedule K-1 for 2007.

To reflect the foregoing,

<u>Decision will be entered for respondent as to the deficiency in tax and for petitioners as to the accuracy-related penalty</u>.